Christopher WARD *v.* Linda Mae Ward McCORD

CA 97-1122                                              966 S.W.2d 925

Court of Appeals of Arkansas
Division III
Opinion delivered April 22, 1998

*James Howard Smith*, for appellant.

*Helen Rice Grinder*, for appellee.

MARGARET MEADS, Judge. Christopher Ward has appealed from an order of the Faulkner County Chancery Court denying his motions to dismiss and for summary judgment, and granting appellee Linda Mae Ward McCord's petition for a new trial on the ground that appellant committed fraud on the court during their divorce action in 1986. Appellee asserted in her petition that appellant had concealed $42,000 in marital funds from her. In her order granting a new trial, the chancellor stated:

> This case should be reopened and [appellee] should be granted a new trial, because [appellant] committed a fraud on the court, and because due diligence by [appellee] would not have uncovered the balance in the disputed savings account. The parties' daughter, Teresa L. DeBolt, was under the control of the [appellant]. While the divorce case was pending, [appellant] moved the disputed $42,000.00 savings account into an account with the daughter's name and social security number on it. Because she was under the control of the [appellant], the daughter would not have revealed any information to the [appellee]. Had the [appellant] asked the daughter to do so, the daughter would have consented to moving the account again in order to conceal it

from the [appellee]. The [appellee] did not file any interrogatories or do any other discovery in the 1986 divorce case, but even if she had done interrogatories or other discovery the [appellee] still would not have uncovered the disputed account.

On appeal, appellant argues that: (1) he did not commit fraud in 1986, and (2) even if he did commit fraud, the fraud was intrinsic, rather than extrinsic, the type of fraud required to vacate a judgment under Ark. R. Civ. P. 60(c)(4). In other words, if appellant defrauded appellee, rather than the court, he argues, the divorce decree cannot be set aside. We have no doubt that appellant did commit fraud against appellee; however, it is not the sort of fraud for which a judgment can be set aside. Therefore, we reverse the chancellor's decision and dismiss this action.

The parties were married in 1960 and had four children. Appellant was an officer in the Air Force, and appellee, who did not graduate from high school, worked as a waitress. By the summer of 1984, the parties had saved approximately $62,000 in joint accounts at the Little Rock Air Force Base Federal Credit Union. That summer, appellee informed appellant that she wanted a divorce, but appellant was able to talk her out of it. Appellant then withdrew $38,000 from the parties' joint accounts and deposited it into an account in his name at the credit union. On May 27, 1986, appellee filed for divorce and informed appellant that she had done so. Appellant immediately went to the credit union and transferred the money in this account, which had increased to $42,000, into an account held in his name and that of the parties' daughter, Teresa DeBolt. This account carried Teresa's address and social security number. Appellant informed Teresa of his actions, and Teresa kept quiet about the account for six years.

On June 30, 1986, the parties entered into a property settlement agreement which provided that each party would keep their own personal effects and that appellant would retain the marital home and be responsible for its debt. The agreement further provided that appellee would retain the sum of $19,000, her IRA of $8,610, and specific items of household furniture; and that appellant would retain the balance of the checking and savings accounts, the remaining IRA, and household items not specifically

given to appellee. The agreement concluded with paragraph 11, which provided: "Each party acknowledges that this is a fair agreement and that it is not the result of any fraud, duress, or undue influence exercised by either party upon the other and further acknowledge [sic] that they have read and understand each and every provision."

In September 1992, Teresa informed appellee of the $42,000 account. On June 11, 1993, appellee filed a petition to set aside the property settlement agreement on the ground that appellant had fraudulently concealed this account from her and had conveyed the funds to Teresa in order to defeat her marital property rights. Appellant responded with motions to dismiss and for summary judgment. In support of his motions, appellant filed his affidavit, wherein he admitted that in August of 1984, he had withdrawn $38,000 from the parties' savings and had placed it in an account in his own name. He stated that he had informed appellee of this action. He also admitted that on May 27, 1986, he had moved the $42,000 that had accumulated in this account into a new account held in his name and that of his daughter, Teresa. He also stated that, during negotiations for the property settlement, he had given appellee a "bottom line figure" for an uncontested divorce: appellee could only have the IRA in her name and $19,000 of their savings. He stated that appellee had considered this proposal and had asked for an additional $1,500 for their son Jeff's braces, to which appellant agreed.

Appellant also filed the parties' son Michael's affidavit. Michael stated that his mother had admitted to him, during negotiations for the property settlement, that she knew appellant had more money and that she might be entitled to a portion of his retirement pay but that she did not care because she wanted out of the relationship as soon as possible.

In response to appellant's motions, appellee filed her own affidavit, in which she stated that throughout the parties' marriage, she was not fully aware of their financial situation because appellant had withheld this information from her. She also said that she had been afraid of appellant and had been under his domination. She stated that when she filed for divorce in 1986, appellant

had told her that he would go to jail before he saw her receive any part of his retirement income. Appellee testified that she was not aware of the $42,000 until September 1992, when Teresa revealed its existence to her.

Appellee also filed Teresa's affidavit. She stated that after her parents' separation, her father had asked her for a favor. She stated that she had agreed to help him hide some money from her mother in a joint account with his and her names, using her social security number. She also said that her father informed her that he had asked a friend employed with the credit union to "put a lock on it" so no one could locate the account.

On December 6, 1993, Chancellor Watson Villines issued a letter order in which he stated: "Although the Court came very near to granting the Motion For Summary Judgment, it will be denied at this time so the Court can hear all of the evidence on this matter." On June 30, 1994, appellant again moved for summary judgment. Appellant argued that appellee had failed to exercise due diligence in the divorce action and that the court lacked jurisdiction to reopen the case under Rule 60(c). The depositions of appellee and Teresa were also filed.

In her deposition, appellee testified that during negotiations, appellant had given her a piece of paper with their assets purportedly listed thereon and stated: "[T]his is what we have; this is what I'm going to agree to, and I will not let you have my retirement." The $42,000 account was not listed on this piece of paper. Appellee also testified that she was afraid of appellant but was tired of arguing with him. She stated that when she went to the credit union for information about their assets, the credit union refused to provide any information to her. Appellee added that even if the credit union had provided her with information, it would have never occurred to her to ask about any accounts in her daughter's name. She admitted that she had informed her lawyer, Phil Stratton, that she could not obtain information from the credit union and had assumed that he had sought that information. She said that when she signed the property settlement agreement, she believed that the $19,000 she received was half of the parties' assets.

Appellee filed the affidavit of her former attorney, Mr. Stratton, in which he stated:

> 3. . . . The existence of marital funds in Mr. Ward's name was not disclosed to me by anyone involved. Anything as important as marital funds would have been pursued vigorously had I known the funds existed.
>
> . . . .
>
> 5. As I remember, Mrs. Ward was adamant in foregoing any interest in her husband's military retirement plan but I believe she would have pursued all other marital property rights and had I known Mr. Ward had not made full disclosure of all marital assets that fact would have been presented to the court for her to pursue or to disclaim.

In August of 1994, Judge Villines denied appellant's second motion for summary judgment, and soon after, appellant filed a notice of appeal. This court dismissed appellant's appeal in CA94-1362 on March 9, 1995. On March 13, 1995, appellant again filed a motion in which he argued that appellee could not prove that she was diligent in uncovering the existence of the bank account, and that even if appellant's actions were fraudulent, they were intrinsic fraud and not the type of fraud required to vacate a judgment. Appellant requested that the court enter findings of fact and conclusions of law. After Judge Villines's untimely death in 1995, Karen Baker was appointed to serve out the remainder of his term. On August 12, 1996, Judge Baker entered an order dismissing this action without prejudice for lack of prosecution.

On January 31, 1997, appellee again filed a petition to set aside the property settlement agreement, alleging the same grounds as before. Appellant again filed motions to dismiss and for summary judgment. The affidavits previously filed were refiled. Chancellor Linda Collier (who was elected to the position formerly held by Judge Villines) heard arguments of counsel on April 3 and April 23, 1997. In her order entered June 2, 1997, she denied appellant's motions to dismiss and for summary judgment and granted appellee a new trial because of appellant's fraud upon the court.

Appellant argues that the chancery court had no jurisdiction to grant a new trial because appellee was not diligent in the divorce proceeding in discovering the existence of the $42,000 account and because the evidence does not establish that he fraudulently withheld information about the account from appellee. Appellant also argues that even if his actions did amount to fraud, they were intrinsic fraud rather than extrinsic fraud and the chancery court lacked jurisdiction to vacate the judgment under Ark. R. Civ. P. 60(c)(4) (1997). Because appellant's actions amounted to intrinsic fraud, we hold that the chancery court lacked jurisdiction to reopen the case and set aside the divorce decree.

■ ■   Rule 60(c)(4) provides:

(c) *Grounds for Setting Aside Judgment, Other Than Default Judgment, After Ninety Days.* The court in which a judgment, other than a default judgment [which may be set aside in accordance with Rule 55(c)] has been rendered or order made shall have the power, after the expiration of ninety (90) days after the filing of said judgment with the clerk of the court, to vacate or modify such judgment or order:

. . . .

(4) For fraud practiced by the successful party in obtaining the judgment.

Rule 60(c) allows judgments to be set aside and new trials granted for the same reasons as could previously be done under Ark. Stat. Ann. §§ 27-1906 and 29-506. *Garrett v. Allstate Inc. Co.*, 26 Ark. App. 199, 762 S.W.2d 3 (1988). Comment 1 in the Reporter's Notes to Rule 60 provides:

This rule is substantially different from FRCP 60. Its purpose is to substantially retain existing Arkansas law on the subject. The Court feels that the adoption of FRCP 60 would detract from the stability of final judgments and that the changes which would be made in Arkansas law are highly undesirable. The distinction between intrinsic and extrinsic fraud as a basis for relief from a judgment is considered an important and desirable one.

■   In *Parker v. Sims*, 185 Ark. 1111, 51 S.W.2d 517 (1932), the supreme court explained the type of fraud that will warrant the setting aside of a judgment:

> The law is settled that the fraud which entitles a party to impeach a judgment must be fraud extrinsic of the matter tried in the cause, and does not consist of any false or fraudulent act or testimony the truth of which was or might have been in issue in the proceeding before the court which resulted in the judgment assailed. It must be a fraud practiced upon the court in the procurement of the judgment itself.

185 Ark. at 1116, 51 S.W.2d at 519-20 (citations omitted).

■ Therefore, the fraud for which a decree will be canceled must consist in its procurement and not merely in the original cause of action. *First Nat'l Bank v. Higginbotham Funeral Serv., Inc.*, 36 Ark. App. 65, 818 S.W.2d 583 (1991). It is not sufficient to show that the court reached its conclusion upon false or incomplete evidence, or without any evidence at all, but it must be shown that some fraud or imposition was practiced upon the court in the procurement of the decree, and this must be something more than false or fraudulent acts or testimony the truth of which was, or might have been, an issue in the proceeding before the court which resulted in the decree assailed. *Id.* *Accord Arkansas State Highway Comm'n v. Clemmons*, 244 Ark. 1124, 428 S.W.2d 280 (1968); *Williams v. Purdy*, 223 Ark. 275, 265 S.W.2d 534 (1954); *McGuire v. Smith*, 58 Ark. App. 68, 946 S.W.2d 717 (1997); *Smart v. Biggs*, 26 Ark. App. 141, 760 S.W.2d 882 (1988). The party seeking to set aside the judgment has the burden of showing that the judgment was obtained by fraud, and the charge of fraud must be sustained by clear, strong, and satisfactory proof. *First Nat'l Bank v. Higginbotham Funeral Serv., Inc.*, *supra.* Whether the procurement of a judgment amounted to fraud upon the court is a conclusion of law. *Hardin v. Hardin*, 237 Ark. 237, 372 S.W.2d 260 (1963).

■ The distinction between extrinsic and intrinsic fraud applies to actions seeking to set aside divorce decrees. In *Alexander v. Alexander*, 217 Ark. 230, 229 S.W.2d 234 (1950), the supreme court reversed a chancellor's decision vacating an order of child support in a divorce decree and held that it was error to vacate the decree on the ground that the plaintiff had led the defendant to believe that the child had been adopted although, in fact, the

adoption had not been completed. In doing so, the court quoted the United States Supreme Court's explanation of extrinsic fraud:

> In the leading case of *United States v. Throckmorton*, 98 U.S. 61, 25 L.Ed. 93, examples of acts which constitute extrinsic or collateral fraud are mentioned as follows: "Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side, — these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing . . . . On the other hand, the doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed."

217 Ark. at 235, 229 S.W.2d at 236. The court further noted that the appellant had obviously believed in good faith that the adoption proceedings had been completed but added:

> However, if she knowingly and falsely testified at the original hearing such action would have amounted to intrinsic fraud and does not involve such extrinsic or collateral fraud as is required to modify or vacate the original decree. The burden was upon appellee in the original hearing to meet the issue of his liability for the child's support and he had ample time and opportunity to do so. There would be no end to litigation if he is permitted to retry the same issue in a subsequent proceeding when there is an absence of fraud practiced upon the court in the procurement of the original decree.

217 Ark. at 236, 229 S.W.2d at 237. *See also Makin v. Makin*, 244 Ark. 310, 424 S.W.2d 875 (1968).

■ Based upon the foregoing authority, we hold that appellant's actions, even if they did amount to fraud, were intrinsic and not extrinsic. The extent of the parties' marital property

clearly was an issue before the chancery court when the divorce decree was entered in 1986. Although an injustice may very well have been done to appellee in 1986, we hold that this case must be reversed and dismissed because the chancery court lacked jurisdiction to set aside the divorce decree.

Reversed and dismissed.

ROGERS and CRABTREE, JJ., agree.