Dickie Bud DICKSON  *v.*
Martha Sue (Dickson) FLETCHER

04–741                                                   206 S.W.3d 229

Supreme Court of Arkansas
Opinion delivered March 31, 2005

[Rehearing denied May 12, 2005.*]

---

* HANNAH, C.J., CORBIN, and BROWN, JJ., would grant rehearing.

246

*Bell Law Firm, P.A.*, by: *Karen Talbot Gean* and *Ronny J. Bell*, for appellant.

*Mitchell, Blackstock, Barnes, Wagoner, Ivers & Sneddon*, by: *Jack Wagoner, III*, for appellee.

Tom Glaze, Justice. The parties in this case, Dickie "Bud" Dickson and Martha Sue Dickson Fletcher, were divorced on September 2, 1994. The divorce decree purportedly set forth all of the parties' properties and indebtedness and divided these properties and debts between Dickie and Martha. Martha was also awarded an amount of monies in lieu of her rights in Dickie's medical practice, and, in addition, Dickie was directed to pay Martha $5,000 per month as alimony until further order of the court. In its decree, the trial court specifically detailed what was understood to be all of the Dicksons' real and personal properties and provided how these marital holdings, interests, and various debts would be divided between the couple. The court concluded the decree by retaining jurisdiction of the parties *and* the subject matter for appropriate future orders.

The Dicksons later found themselves in a post-decree dispute during which Martha's attorney deposed Dickie's accountant, Stephen B. Humphries. At that deposition, on December 16, 1998, Humphries produced a statement reflecting Dickie's net worth, which included shares of Exxon stock valued at about $102,766. Though Dickie owned the Exxon stock at the time of the parties' divorce, Martha charged that Dickie never disclosed this stock, even though Martha requested in her discovery that he identify all of the stocks he owned. Upon learning that Dickie had failed to reveal the Exxon shares at the time of their divorce, Martha filed a motion, using the same docket number from the parties' 1994 divorce case, in which she alleged Dickie had committed fraud during their divorce proceeding by presenting a false and misleading financial statement to the court. In her motion, she asked the court to divide the Exxon stock equally or order Dickie to pay her one-half of the value of the stock.

In response, Dickie claimed that Martha's action was barred by the statute of limitations under Ark. Code Ann. § 16-56-105 (1987). Dickie also relied on the defenses of lack of jurisdiction over his person and insufficiency of process. Dickie subsequently filed a motion to dismiss Martha's motion to divide the Exxon stock, arguing that Martha's motion asserted an additional or new claim for relief against him. Accordingly, he argued, she was required to serve a summons and complaint under Ark. R. Civ. P. 4(d)(8)(A), as provided by Ark. R. Civ. P. 5. Dickie contends that Martha never properly served him under Rule 4.

Although Rule 5(a) provides that pleadings asserting new or additional claims for relief shall be served in the manner provided for service of summons in Rule 4, Martha pointed the judge to Rule 5(b)(3), which reads, "If a final judgment or decree has been entered and the court has *continuing jurisdiction*, service upon a party by mail or commercial delivery company shall comply with the requirements of Rule 4(d)(8)(A) and (C), respectively." (Emphasis added.) Martha argued to the trial judge that Rule 4(d)(8)(A) refers to a summons and complaint, but her situation involved a post-decree motion in a case in which the trial court had specifically retained jurisdiction of the matter; therefore, she argued, a new complaint and summons were not required to be served.

The trial court agreed with Martha's argument, and added that the intent of these rules with respect to a post-decree motion is to assure that such a motion is sent to the party, rather than to the party's attorney, and that the motion to modify or

vacate a decree is served on the party in compliance with the methods set out in Rule 4. We agree with the trial judge's findings and ruling. Accordingly, we conclude that the purpose of Rule 5(b)(3) is not to require that a party must serve summonses with motions to modify a final decree when the court has reserved continuing jurisdiction. Instead, Rule 5 simply directs that such motions are required to be served in the same manner or method required for a summons and complaint, that is, served by mail with a return receipt requested and delivery restricted to the addressee or his or her agent. *See* Rule 4(d)(8)(A)(i); *see also In re: Arkansas Rules of Civil Procedure 4, et seq.*, 336 Ark. Appx. 588 (1999).

In affirming the trial judge on this point, we are mindful of Dickie's reliance on the case of *Office of Child Support Enforcement v. Ragland*, 330 Ark. 280, 954 S.W.2d 218 (1997). In so doing, he submits that the *Ragland* court looked to case law addressing the trial court's continuing personal jurisdiction over the parties in a divorce action. The *Ragland* court, Dickie argues, held that a trial court has continuing personal jurisdiction over parties to a divorce with respect to support and alimony matters. However, Dickie argues, the trial court is not deemed to have continuing jurisdiction over every dispute that may arise between the former parties to a divorce action. Citing *Jones v. Jones*, 26 Ark. App. 1, 759 S.W.2d 42 (1988), Dickie adds that "a general reservation of jurisdiction will permit modification of a decree after ninety days only with respect to issues [that] were before the trial court in the original action." Dickie concludes that a trial court's recitation in the divorce decree that it retained jurisdiction for all future proceedings does not, absent grounds for so doing, allow it to divide marital property not mentioned in the decree after ninety days. *See* Rule 60(c).

We point out that the parties' decree before us shows that Dickie is required to pay Martha $5,000 per month as alimony "until further order of the court"; therefore, this language clearly reflects that the order to make alimony payments is not final and could require further proceedings. Nonetheless, having made that declaration, the trial court also found it necessary to provide at the end of the decree that it was retaining jurisdiction of the parties and the subject matter for appropriate future orders. Considering the substantial amount of properties and debts divided and distributed between the parties in the decree, it is reasonable to conclude that

the trial judge foresaw that she might be asked to address more issues than those involving alimony in the future. Of course, that is exactly what happened.

Dickie also takes issue with the trial court's grant of Martha's summary-judgment motion. In so doing, the trial court modified the parties' divorce decree under Rule 60(c)(4) because Dickie had committed a misrepresentation or fraud. In this respect, the trial court determined that, at the time of the divorce, Dickie introduced into evidence a statement of net worth which failed to disclose his ownership of the shares of Exxon stock now in issue.

On appeal, Dickie argues that the trial court erred on this point because Martha could have taken depositions of Dickie's stock brokers and financial advisors to ascertain whether Dickie had knowledge of the Exxon stock at the time of the parties' divorce. Dickie suggests that, because Martha offered no evidence that he actually knew the Exxon shares existed, she failed to show either intentional or constructive fraud.

Despite Dickie's arguments, the trial judge held that Martha was not required to show a subjective intent to engage in fraud on Dickie's part, and that her proof of constructive fraud was sufficient to reopen a divorce under Rule 60(c)(4). The judge specifically found that Martha proved constructive fraud by showing Dickie had a legal and equitable duty to be truthful in his discovery responses and in his testimony at trial. The trial judge concluded that, even if Dickie's misrepresentation was unintentional when he omitted his Exxon stock, valued in excess of $100,000.00, such an unintentional misrepresentation constituted constructive fraud.

Again, the trial court is correct. This court has held that constructive fraud or the breach of a legal or equitable duty to another warrants setting aside or modifying a judgment. *See RLI Ins. Co. v. Coe*, 306 Ark. 337, 347, 813 S.W.2d 783, 788 (1991); *see also Davis v. Davis*, 291 Ark. 473, 725 S.W.2d 845 (1987). A party to a legal proceeding owes a duty to answer discovery requests under oath, Ark. R. Civ. P. 33(b), and is under a further duty to reasonably amend a prior response to discovery when he knows that the response, though correct when made, is no longer true, and the circumstances are such that a failure to amend the response is in substance a knowing concealment. *Phillips v. McAuley*, 297 Ark. 563, 764 S.W.2d 424 (1989) (citing Ark. R. Civ. P. 26(e)(2)).

In the instant case, Dickie never denied that his responses to Martha's discovery requests omitted his Exxon stock

and that he failed to supplement his discovery responses. In addition, Dickie neither denied that his statement of net worth at the time of the parties' divorce omitted the disputed stock, nor did he deny that he presented false testimony by stating his statement of worth was complete. Thus, the trial court did not err in ruling that Dickie had committed fraud.

■ Finally, we address Dickie's argument that, even if Martha's proof is sufficient to show constructive fraud, such fraud was intrinsic, which was not a ground in 1994 for setting aside or modifying the parties' decree under Rule 60(c)(4). At the time of the Dicksons' divorce, Rule 60(c)(4) provided that only extrinsic fraud was a ground for reopening a judgment or decree ninety days after the judgment or decree was filed. Our court has described extrinsic fraud as that practiced upon the court in the procurement of the judgment itself, and not merely in the original cause of action. *McAdams v. McAdams*, 353 Ark. 494, 109 S.W.3d 649 (2003); *Turley v. Owen*, 188 Ark. 1067, 69 S.W.2d 882 (1934). Dickie contends that, assuming fraud was shown, it was intrinsic fraud, which was not cognizable under Rule 60(c)(4) as it read in 1994, when the Dicksons' divorce was entered and filed.

Dickie further argues that Martha's claim is clearly based on intrinsic fraud, which was not, at the time the decree was entered in 1994, a basis for vacating or modifying a decree after ninety days. Consequently, because Martha did not show extrinsic fraud on Dickie's part in order to meet the Rule 60(c)(4) requirement in effect in 1994, Dickie argues the trial court erred when it reopened and modified the parties' decree. In support of his contention, Dickie cites *Ward v. McCord*, 61 Ark. App. 271, 966 S.W.2d 925 (1998), in which a husband, after learning his wife had filed for a divorce, transferred $42,000 in marital assets into an account held in his name and that of the parties' daughter, and failed to include these assets when he gave a list of assets to his wife. The court of appeals held that the husband's actions amounted to intrinsic fraud, which was not a ground for reopening the parties' divorce case to modify their decree. *Id*. As we will discuss in more detail below, the *Ward* holding is inapplicable here because it was decided *before* the 2000 amendment to Rule 60.

Martha rebuts Dickie's contention by stating that this court amended Rule 60(c)(4) in 2000 to eliminate the distinction between intrinsic and extrinsic fraud. Rule 60(c)(4) now provides that the court in which a judgment has been rendered shall have

the power, after the expiration of ninety days from when the judgment was filed, to vacate or modify such judgment or order "for misrepresentation or fraud whether *heretofore denominated intrinsic or extrinsic*, by an adverse party." (Emphasis added.) Because of this revision of the rule by our court in 2000, Martha submits that Dickie's failure to disclose his ownership of Exxon stock during the parties' divorce proceeding amounted to intrinsic-constructive fraud, and that Rule 60, as amended, now allows her to assert her share in ownership of the Exxon stock.

Martha additionally posits that this court's 2000 amendment to Rule 60(c)(4) should be applied retrospectively to the Dicksons' case. If so, Martha's proof of Dickie's constructive and intrinsic fraud was sufficient to reopen their 1994 divorce. We now turn to the issue as to whether this court's 2000 amendment should apply retroactively or prospectively.

█ █   This court has held that it construes its own rules using the same means, including canons of construction, as are used to construe statutes. *Gannett River States Pub. Co. v. Arkansas Jud. Disc. & Disability Comm'n*, 304 Ark. 244, 801 S.W.2d 292 (1990). In doing so, we are met first with the canon that retroactivity is a matter of legislative intent and, unless it expressly states otherwise, this court will presume the legislature intends for its laws to apply only prospectively. *Estate of Wood v. Arkansas Dep't of Human Services,* 319 Ark. 697, 894 S.W.2d 573 (1995) (citing *Chism v. Phelps,* 228 Ark. 936, 311 S.W.2d 297 (1958)). Our court has also held that any interpretation of an act must be aimed at determining whether retroactive effect is stated or implied so clearly and unequivocally as to eliminate any doubt. *Jurisdiction- USA, Inc. v. Loislaw.com, Inc.,* 357 Ark. 403, 183 S.W.3d 560 (2004).

█   The foregoing rules of construction, however, do not ordinarily apply to procedural or remedial legislation. *JurisdictionUSA, supra; see also Forrest City Mach. Works v. Aderhold,* 273 Ark. 33, 616 S.W.2d 720 (1981). In different terms, this court has held that the strict rules of construction, as described above, do not apply to remedial statutes that do not disturb vested rights, or create new obligations, but only supply a new or more appropriate remedy to enforce an existing right or obligation. *JurisdictionUSA, supra; Harrison v. Matthews,* 235 Ark. 915, 362 S.W.2d 704 (1962). Moreover, this court has held that procedural legislation is more often given retroactive application. *JurisdictionUSA, supra; Barnett v. Arkansas Transp. Co.,* 303 Ark. 491, 798 S.W.2d 79 (1990). Furthermore, we have frequently held that "the cardinal principle

for construing remedial legislation is for the courts to give appropriate regard to the spirit which promoted its enactment, the mischief sought to be abolished, and the remedy proposed." *JurisdictionUSA, supra; Arkansas Dep't of Human Servs. v. Walters,* 315 Ark. 204, 866 S.W.2d 823 (1993). In *JurisdictionUSA, supra,* this court also noted the following:

> Although the distinction between remedial procedures and impairment of vested rights is often difficult to draw, it has become firmly established that *there is no vested right in any particular mode of procedure or remedy.* Statutes which do not create, enlarge, diminish, or destroy contractual or vested rights, but relate only to remedies or modes of procedure, are not within the general rule against retrospective operation. In other words, statutes effecting changes in civil procedure or remedy may have valid retrospective application, and remedial legislation may, without violating constitutional guarantees, be construed . . . to apply to suits on causes of action which arose prior to the effective date of the statute . . . *A statute which merely provides a new remedy, enlarges an existing remedy, or substitutes a remedy is not unconstitutionally retrospective . . . .*

(Emphasis added.) *See also Padgett v. Bank of Eureka Springs,* 279 Ark. 367, 651 S.W.2d 460 (1983) (citing 16A Am. Jur. 2d § 675 (1979)). In *JurisdictionUSA,* we further held that Ark. R. Civ. P. 55 is a procedural rule, is remedial in nature, and, accordingly, should be given retroactive effect.

Here, Martha submits that Dickie has no "vested right" to commit fraud through false testimony or false discovery responses; therefore, the amended rule should be applied retroactively. Martha next contends that it is contrary to the "equity and justice of the case" to find that Dickie has a vested right to keep the stock that he retained through giving false testimony, presenting false exhibits, and giving false discovery responses. *Aderhold,* 273 Ark. 33, 41, 616 S.W.2d 720, 725. Because evidence of intrinsic fraud simply supplies a new or more appropriate remedy to enforce an existing right or obligation, Martha asserts that amended Rule 60 should be applied retroactively. *See Harrison, supra.* We agree that the purpose in this court's Rule 60, as amended, is not intended to protect a party so that he might benefit from his fraudulent act; rather, in a case where the opposing party, like Martha here, had done all she could to discover and obtain all the property and assets owned by Dickie, Rule 60 allows an aggrieved party to reopen the case so that the trial court can make a fair and

legal distribution of the parties' property, as it was prevented from doing when the parties' judgment was entered in this case.

Under the rule prior to the 2000 amendment, parties clearly had an existing right to set aside or modify a judgment for fraud, but they could employ only extrinsic fraud, not intrinsic fraud, as a ground at any time after the ninety-day period elapsed following the filing of a judgment. Our court decided this splitting of the time or mode of procedure in enforcing a party's right to correct a seriously flawed judgment should be eliminated. When recognizing and remedying this unfair distinction between extrinsic and intrinsic fraud, this court characterized the distinction as "shadowy, uncertain, and somewhat arbitrary." *In re Arkansas Rules of Civil Procedure*, 340 Ark. Appx. 731 (2000). Because this court amended Rule 60(c)(4), to supply a new or more appropriate remedy to enforce an existing right and obligation in order to avoid unjust results, we conclude the court's amendment to Rule 60(c)(4) was remedial in nature and appropriately applied retroactively by the trial court in this case.[1]

For the reasons above, we affirm.

HANNAH, C.J., CORBIN and BROWN, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. With today's decision, *every* judgment, order, and decree entered before the year 2000 is subject to attack on the basis of intrinsic fraud. As a result, the finality of all judgments, orders, and decrees can be called into question. I cannot subscribe to such a sweeping and absurd interpretation of our 2000 amendment to Rule 60(c)(4) of our Rules of Civil Procedure. No other state has allowed retrospective attacks on judgments, orders, and decrees based on a rule change permitting

---

[1] The dissenting opinion points out that this court amended our Rule 60(c)(4) to allow intrinsic fraud as a reason to set aside a judgment, relying on Rule 60(b)(3) of the Federal Rules of Civil Procedure. However, the federal rule, unlike this state's Rule 60, permitted and limited raising assertions of both intrinsic and extrinsic fraud to one year after entry of judgment. Of course, unlike the federal rule, our court's procedural rule has permitted a party to raise extrinsic fraud at any time after the filing of the judgment. Our Rule 60(c), as amended in 2000, merely authorized a party to reopen a case based upon either a showing of extrinsic or intrinsic fraud. Obviously, this court was aware of the difference between its rule and the federal rule, and this court continued to choose a different manner in which to treat reopening a case. This court surely can adopt a rule of limitations if it chooses, but it declined to do so in 2000, or since then.

challenges for intrinsic fraud. For that reason, I would interpret Rule 60(c)(4) reasonably to apply only prospectively, which would avoid the sea change that today's decision will foment.

Before January 27, 2000, judgments and decrees could be set aside under Rule 60(c)(4) of our Civil Procedure Rules only for extrinsic fraud which is fraud practiced upon the court. There was no time limit specified for raising issues of extrinsic fraud, which meant they could be raised at any time. However, intrinsic fraud allegations such as perjury allegations had to be raised within ninety days of judgment under Rule 60(b).

On January 27, 2000, this court changed Rule 60(c)(4) to allow assertions of intrinsic fraud for purposes of setting aside a judgment to be raised. We said in our 2000 *per curiam* amending Rule 60(c)(4) that the language including intrinsic fraud is taken in part from Rule 60(b)(3) of the Federal Rules of Civil Procedure. *See In Re: Arkansas Rules of Civil Procedure*, 340 Ark. Appx. 731 (2000). The federal rule, however, unlike our rule, limits assertions of intrinsic and extrinsic fraud to one year after entry of judgment. Neither the federal rule, which was adopted in 1946, nor the recommendation from our Civil Practice Committee, nor the *per curiam* adopting our rule change on January 27, 2000, in any way indicate that the new rule is procedural or remedial or that it should be applied to judgments and orders entered prior to January 27, 2000. Generally, when we consider a law remedial for purposes of giving it a retrospective effect, we look to the intent of the legislature. *See, e.g., Bruner v. Tadlock*, 338 Ark. 34, 991 S.W.2d 600 (1999). No such intent was expressed in our adopting *per curiam*.

The finality of judgments upon which the parties can rely is fundamental to our system of jurisprudence. Virtually every state espouses a strong public policy in favor of the finality of judgments. *See, e.g., Panzino v. City of Phoenix*, 196 Ariz. 442, 999 P.2d 198 (2000); *People ex rel. J.A.U. v. R.L.C.*, 47 P.3d 327 (Colo. 2002); *Shimabuku v. Montgomery Elevator Co.*, 79 Haw. 352, 903 P.2d 48 (1995); *In re: Marriage of Kates*, 198 Ill. 2d 156, 761 N.E.2d 153 (2001); *Wal-Mart Super Center v. Long*, 852 So. 2d 568 (Miss. 2003); *Nussbaumer v. Fetrow*, 556 N.W.2d 595 (Minn. Ct. App. 1996); *Joy v. Joy*, 105 N.M. 571, 734 P.2d 811 (Ct. App. 1987); *Pearn v. DaimlerChrysler Corp.*, 148 Ohio App. 3d 228, 772 N.E.2d 712 (2002); *Bowman v. Bowman*, 357 S.C. 146, 591 S.E.2d 654 (Ct. App. 2004); *Baker v. Goldsmith*, 582 S.W.2d 404 (Tex. 1979). Arkansas, of course, is no exception and is in complete agreement

with this policy. *See, e.g.,* Reporter's Notes to Rule 60, Ark. R. Civ. P. 60. *See also Lord v. Mazzanti,* 335 Ark. 25, 2 S.W.3d 76 (1999).

What this court is doing today is interpreting its rules so as to allow the reopening of a matter that has already been time-barred. Yet, this court has been resolute in preventing the General Assembly from doing exactly that by applying its legislation retrospectively. *See, e.g., Hall v. Summit Contractors, Inc.,* 356 Ark. 609, 158 S.W.3d 185 (2004) (General Assembly's repeal of the Limitations Act could not revive a claim that was already time-barred); *Green v. Bell,* 308 Ark. 473, 826 S.W.2d 226 (1992) (supreme court could not consider application of 1991 amendment to statute which enlarged statute of limitations in action for enforcement of child support or for judgment of arrearages in the instant case because application would revive a cause of action previously barred); *Johnson v. Lilly,* 308 Ark. 201, 823 S.W.2d 883 (1992) (statute enlarging statute of limitations for enforcement of child-support obligations could not be applied retroactively to revive claims already barred). Why should this court do precisely what it has proscribed the General Assembly from doing?

Moreover, there is no question that Dickson has a vested right in the property matters that have been settled. When a case is reopened after ten years because of a later rule change, the vested right of the parties to rely on the finality of the decision is savaged beyond repair. For this court to undo that principle renders the entire common law of this state uncertain, as every judgment, order, or decree can now be called into question. That flies in the face of common sense.

The majority equates setting aside a judgment under Rule 60 for intrinsic fraud to a recent rule change to Rule 55(f), which prevents a default judgment following remand from federal court, when an answer had been filed in federal court. That comparison by the majority goes far beyond comparing apples to oranges, but is more like comparing apples to trucks. Our decision relating to the retroactivity of Rule 55(f) in *JurisdictionUSA, Inc. v. Loislaw.com, Inc.,* 357 Ark. 403, 183 S.W.3d 560 (2004), has nothing to do with setting aside judgments under Rule 60(c)(4). The distinctions between Rule 55(f) and Rule 60(c)(4) are obvious:

- This court had previously held that Rule 55 was a procedural rule, remedial in nature, and could be given retroactive effect. *See Divelbliss v. Suchor,* 311 Ark. 8, 841 S.W.2d 600 (1995). There

has never been a decision by this court or a *per curiam* order holding that Rule 60 is a procedural rule or remedial in nature so that any changes to the rule allowing for the reopening of time-barred cases could be applied retroactively.

- Rule 60(c) by its terms specifically does not apply to default judgments. *See also Epting v. Precision Paint & Glass, Inc.*, 353 Ark. 84, 110 S.W.3d 747 (2003).

- Rule 55(c) and 55(f) clearly set out the procedural steps for setting aside default judgments by the party against whom a default judgment is entered and, thus, are easily categorized as procedural.

- The party moving for default judgment under Rule 55(b) knows that the judgment may be set aside upon motion by the opposing party under Rule 55(c). Thus, there is no expectation of finality for the default judgment until the motion to set aside is decided. Indeed, the trial court may conduct a hearing or convene a jury for purposes of damages or for some other remedy. *See, e.g., Polselli v. Aulgur*, 328 Ark. 111, 942 S.W.2d 832 (1997).

- The parties in the instant case in 1995, when the divorce decree was entered, did have the expectation of finality with respect to an allegation of intrinsic fraud because it was not raised within ninety days as required at that time under Rule 60(b).

In 1969, a former Justice of this court, George Rose Smith, with tongue planted firmly in cheek, wrote an opinion abolishing all statutory law based on a General Repealer Clause enacted by the General Assembly. *See Poisson v. d'Avril* (reprinted in 22 ARK. L. REV. 741 (1969)). The opinion was a joke. Here, this decision placing *all* judgments, orders, and decrees under a Rule 60 cloud is no joke, but the consequences are just as far-reaching.

I predict that today's decision will necessitate an almost immediate rule change by this court to prevent the retrospective application of Rule 60(c)(4), and the unravelling of previous judgments and decrees. That in itself will be recognition of the fact that today's decision hits far wide of the mark. But even when the rule change does occur, and I am certain that it will, this will not minimize the fact that today this court has given an unreasonable and illogical interpretation to Rule 60(c)(4) to benefit a single party in the instant case. To be sure, the failure to disclose assets in a divorce case is a very serious matter, but the time to resolve that

issue was before the case had ended and before the ninety-day time frame for attacking such judgments under Rule 60 had expired. By reopening this matter a decade after this case had been laid to rest, this court attempts to correct an alleged wrong. What it does, however, is sacrifice the time-honored principle in favor of stability of our common law and the finality of judgments on the altar of equity. This I cannot do.

For all of these reasons, I would reverse the trial court. I respectfully dissent.

HANNAH, C.J., and CORBIN, J., join in this dissent.