Lee BATTLES, Willie Mae Aldid, Nationwide Mutual Insurance Company *v.* Stephen MOREHEAD

CA 07-1176                                                    288 S.W.3d 693

Court of Appeals of Arkansas
Opinion delivered October 22, 2008

*Wright, Lindsey & Jennings, LLP,* by: *Kathryn A. Pryor, Regina A. Young,* and *Gary D. Marts, Jr.,* for appellant.

*John Doyle Nalley,* for appellee.

D.P. MARSHALL JR., Judge. This car-wreck case was tried only on damages. The focus was plaintiff Stephen Morehead's injuries. At trial, and over defendant Lee Battles's objection, Morehead testified about his recent treatment by a doctor not revealed in his discovery responses. Morehead had answered the discovery approximately two years before trial and had not supplemented his responses about the additional medical treatment. This new doctor and treatment came as a surprise to everyone but Morehead. After the verdict, Battles unsuccessfully sought a new trial with a Rule 59 motion and then a Rule 60 motion to vacate the judgment. Battles's timely appeal presses several points. The dispositive question is this: Did the circuit court make an error of law about a constructive fraud in Morehead's incomplete discovery responses, and thus abuse its discretion by denying Battles relief under Rule 60? *Downum v. Downum,* 101 Ark. App. 243, 247, 274 S.W.3d 349, 352 (2008) (standard of review). It did. The undisputed facts and governing law establish that a constructive fraud occurred when Morehead did not fulfill his duty of supplementing his discovery responses about his medical treatment. We therefore reverse the judgment and remand for a new trial.

I.

Taking multi-tasking to a new level, Battles backed his car through an intersection while talking on his cell phone and watching television. Morehead was driving through the intersection in his pick-up truck pulling a trailer with a boat on it. The collision damaged Morehead's vehicles and hurt him. The impact twisted and banged him around, injuring Morehead's right shoulder, neck, and right arm.

Morehead's injuries were the hub of this case. Battles's interrogatory no. 16 asked Morehead for "the names and addresses of all physicians who have examined or treated you for injuries received in the occurrence," the examination and treatment dates, his doctors' "findings," their charges, and the reason for each

exam. Morehead's response listed two doctors, two radiologist groups, and three other medical entities. Battles's interrogatory no. 35 asked Morehead to supplement his responses: "Will you supplement your answers to these interrogatories upon receipt of any information which would alter, amend or supplement your previous answers?" Morehead responded: "Plaintiff will comply with Arkansas Rules of Civil Procedure." Morehead did not verify his answers as required by Rule of Civil Procedure 33(b)(1) & (2). His lawyer signed and served them approximately two years before trial. Battles also served a request for production of documents, asking Morehead to produce copies of all relevant narrative medical reports. In response, Morehead attached an authorization for Battles to gather the medical records.

Battles conceded liability. He neither attended trial nor testified. The only issues tried were the nature and extent of Morehead's injuries and property damage. Several of Morehead's doctors, including Dr. Russell Burton (his primary physician) testified by video deposition. Battles hired a medical expert, who reviewed Morehead's medical records and testified about his injuries. Morehead testified in detail about his injuries and medical treatment. One of the injury issues was whether Morehead had a torn rotator cuff. An MRI indicated one, and as his lawyer put it in his opening statement, early in Morehead's medical treatment "everybody thought . . . he's got a rotator cuff tear." An arthrogram and surgery revealed no such tear. In his opening, Morehead's counsel explained these facts and said that his client did not have a rotator–cuff tear.

At the end of his redirect testimony, Morehead asked his lawyer: "Can I add one thing?" Counsel agreed and Morehead said: "Dr. Burton sent me to Dr. Thomas for a test on some nerves here not long ago. Dr. Thomas did tests on me — this was two months ago or three months ago. He told me, said, 'You have a torn rotator cuff. You need to go back and get an MRI.' "

Battles's counsel sought a bench conference and moved for a mistrial based on the undisclosed medical treatment. The circuit court denied the motion, saying that the nondisclosure went to Morehead's credibility. Under further questioning from his lawyer, Morehead testified he was still having problems with his shoulder. When specifically asked if he was claiming that he had a rotator–cuff tear from this accident, Morehead responded, "No. I'm just telling you that's what I was told and . . . that's just what I was told." At a second bench conference, the court suggested

that Battles's lawyer ask Morehead why he did not provide her all his medical bills. She did, and Morehead said that she had not asked for them and he had never met her until that morning. He also said that he did not pursue Dr. Thomas's statement about the torn rotator cuff because he would "never, ever again have a shoulder operated on." Then Morehead said twice that Battles's counsel "probably" had the bill from Dr. Thomas and ended by saying: "You have the bill, I'll bet you." At the end of another bench conference, the circuit court again denied relief. The court concluded that "the failure to provide complete discovery is — it goes to the credibility of the party . . . that's failed to do that."

The jury returned a general verdict for Morehead and awarded him $8,000.00 for property damage and $200,000.00 for bodily injuries. His medical bills were approximately $25,000.00. Battles filed timely motions under Rule 59 and Rule 60. He supported his Rule 60 motion with Dr. Thomas's belatedly obtained records. Morehead had seen this doctor approximately six months before trial on referral from Dr. Burton. The records did not contain a diagnosis of a torn rotator cuff. The circuit court denied any post-trial relief.

## II.

This record demonstrates a constructive fraud. *Downum*, 101 Ark. App. at 247-49, 274 S.W.3d at 352-53 (elements). The undisputed facts show that Morehead's unsupplemented interrogatory response misrepresented his treatment by omitting any reference to Dr. Thomas. Battles justifiably relied on the response in preparing his defense on the core issue in the case, Morehead's injuries. And he was prejudiced by not having Dr. Thomas's records in hand during Morehead's volunteered testimony and by not having them before trial to craft a defense based on all the evidence. *Ibid.*

The fraud was constructive, rather than actual, because the record does not show an intent to deceive. Morehead's lawyer was as surprised by the revelation of Dr. Thomas's treatment and purported opinion as everyone else. "[C]onstructive fraud, sometimes called fraud in the law, may exist in the complete absence of dishonesty of purpose, evil intent, or moral guilt." *Downum*, 101 Ark. App. at 248, 274 S.W.3d at 352; *see also Roach v. Concord Boat Corp.*, 317 Ark. 474, 476, 880 S.W.2d 305, 306-07 (1994). "[C]onstructive fraud is based on a breach of a legal or equitable

duty that the law declares to be fraudulent because of its tendency to deceive others." *Downum*, 101 Ark. App. at 248, 274 S.W.3d at 352.

Rule of Civil Procedure 26(e)(1) imposed a legal duty on Morehead to supplement his discovery responses if any of them got stale. His response to interrogatory no. 16 did. When Morehead's lawyer made the response about two years before trial, and listed the doctors, the answer was no doubt complete. But the Rule requires a party to do more. "A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Ark. R. Civ. P. 26(e).[1] Morehead's response was incomplete. Dr. Thomas's treatment of Morehead was not made known to Battles in any way. Morehead recognized his duty when he responded to Battles's interrogatory about supplementary answers. Morehead, however, did not follow through on complying with our Rules about supplementary discovery responses.

*Dickson v. Fletcher*, 361 Ark. 244, 206 S.W.3d 229 (2005) is on point and controlling. In that divorce case, the husband omitted some Exxon stock from his list of assets in his discovery responses and in his testimony. The omission was discovered several years later. On the wife's Rule 60 motion to modify the decree, the circuit court concluded that the husband's omission — even if unintentional — worked a constructive fraud, which justified modifying the decree. 361 Ark. at 250, 206 S.W.3d at 232-33. The supreme court affirmed in no uncertain terms, relying in large part on the husband's incomplete discovery responses. 361 Ark. at 247-48, 250-51, 206 S.W.3d at 231-34. Just as Dickson's wife was entitled to know about all his assets in response to her discovery

---

[1] The Rule as quoted reflects an amendment effective in May 2006. The current version of Rule 26(e) was in effect in 2007 when Morehead was treated by Dr. Thomas and at the trial. The 2006 amendment clarified and strengthened litigants' duty to supplement discovery responses. Addition to Reporter's Notes, 2006 Amendment. Though it was worded differently, the Rule in effect in 2005 when Morehead answered this discovery imposed the same duty to supplement. Morehead argues that the Rule requires only truthfulness of the responses when given and prohibits a knowing concealment of information. Those standards, however, were changed by the 1999 amendment to Rule 26(e). Addition to Reporter's Notes, 1999 Amendment.

request, Battles was entitled to know about all Morehead's treating doctors in response to his discovery request.

█ Morehead acknowledges his Rule 26 duty to supplement, but argues that Battles likewise had a duty to inquire diligently. If Battles had asked Dr. Burton — the primary treating doctor — about other doctors during his deposition, Morehead says, then everyone would have learned about Dr. Thomas before trial. Morehead is correct, but this is only half the point. Battles propounded timely and targeted interrogatories and requests for production. Those discovery requests satisfied Battles's duty of diligence in these circumstances. "[A person] may not omit inquiry and examination" and then complain that the resulting silence left him uninformed. *Kinkead v. Union National Bank*, 51 Ark. App. 4, 15, 907 S.W.2d 154, 160 (1995) (quotation omitted). Battles did not omit inquiry. His discovery triggered Morehead's duty to respond and seasonably supplement pursuant to Rule 26(e)(1).

Morehead presses hard that, for several reasons, his failure to supplement did not prejudice Battles. He points out that Dr. Thomas did not diagnose a rotator-cuff tear, and thus his proof on this issue would have been cumulative to the other doctors' final opinions. Morehead says that he did not seek any damages for this kind of injury. Finally, Morehead pointed out at oral argument that Dr. Thomas's evaluation related mostly to carpel tunnel syndrome, a condition unrelated to the accident and irrelevant to the issues at trial.

█ We are persuaded, however, that prejudice occurred. First, the rotator-cuff issue was muddy because of the doctors' unanimous preliminary impression based on the MRI, Morehead's continued shoulder pain, and Morehead's testimony. When asked if he was claiming that this accident caused the tear, Morehead said "[n]o." But then he immediately told the jury that Dr. Thomas had told him his rotator cuff was indeed torn. He said that he still had problems with his shoulder. Later, Morehead repeated that "in [Dr. Thomas's] opinion" he had a torn rotator cuff. Morehead's incomplete discovery response took an arrow from Battles's quiver: he did not have the tell-tale records to use in responding to Morehead's testimony about Dr. Thomas's purported diagnosis. Second, Morehead also insisted that Battles actually had Dr. Thomas's records — "[y]ou have the bill, I'll bet you" — when in fact Morehead had not disclosed this doctor's treatment. This

insistence turned Morehead's discovery omission into an arrow for him, an arrow he used against Battles.

Third, Dr. Thomas's records were not entirely cumulative. They were the only way of responding to Morehead's testimony about Dr. Thomas's opinion. They would have helped clear up the rotator-cuff issue. And they addressed another injury issue. Dr. Burton had given varying opinions about whether Morehead suffered from cervical radiculopathy — disease of the cervical nerve roots, often manifesting as neck or shoulder pain. DOR-LAND'S ILLUSTRATED MEDICAL DICTIONARY 1562 (30th Ed. 2003). In 2003 and in 2006 Dr. Burton diagnosed this condition, while in 2007 he said it did not exist. As best we can tell, Dr. Thomas did the 2007 testing that confirmed no cervical radiculopathy. Battles was entitled to have the benefit, before trial, of Dr. Thomas's testing and opinions on that injury issue too.

■ Finally, apart from these particulars, there is a general and more important point. What to make of Dr. Thomas's records in the case as a whole was Battles's choice, not Morehead's. But Battles never got to make that choice. This is precisely the bind that Rule 26(e)(1) aims to prevent. This error went deeper than Morehead's credibility. His failure to supplement deprived Battles of the opportunity to formulate his side of the case on the key issue — Morehead's injuries — based on all the medical evidence before trial. This lost opportunity is also why Morehead is mistaken in his argument that a limiting instruction could have cured any preju-dice here. Morehead's failure to supplement his list of doctors has legal consequences: this constructive fraud entitles Battles to a new trial.

III.

There are some loose ends. Battles also argues that the verdict was excessive. We need not and do not reach this issue. Battles makes two other arguments for reversal. We address and reject them because these issues may arise on retrial.

■ First, remarks about Battles's race. Recall that Battles did not appear for trial. Morehead's opening statement described Battles as "a young black man who was driving a large black Cadillac" and later referred to him as "the black fellow driving this car." During his examination of a police officer, Morehead again referred to Battles as the black man driving the Cadillac. Battles did

not object to any of these statements. His silence waived the issue. Our supreme court has held that comments more derogatory than these can be cured by a timely objection and a cautionary instruction. *E.g.*, *Day v. Ferguson & Wheeler*, 74 Ark. 298, 299-301, 85 S.W. 771, 772-73 (1905). Our review of the record also convinces us that the remarks here were inadvertent. We nonetheless emphasize for the bar that racial stereotypes have no place in our courts of equal justice under law.

■ Second, disputed references to insurance. The jury was not told that Nationwide was a party or that Morehead's complaint sought underinsured coverage. But Morehead made several references in opening and closing to the fact that Battles's medical expert often testified for, and was paid by, insurance companies. Without objection, Morehead even introduced a copy of a letter that the doctor had sent to four hundred insurance companies soliciting business as an expert. References to insurance coverage during trial can be unfairly prejudicial. *E.g.*, *Hacker v. Hall*, 296 Ark. 571, 575-77, 759 S.W.2d 32, 34-35 (1988). Morehead's disputed references in this case, however, were to the doctor's clients, not coverage. These references were close to the line but not over it. They were fair comments on the proof. No reversible error occurred.

Reversed and remanded.

PITTMAN, C.J., and HEFFLEY, J., agree.