

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-13-653

|  |  |
|---|---|
| | **Opinion Delivered** February 12, 2014 |
| JOE RYBURN | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT |
| APPELLANT | [No. DR-04-653-1] |
| V. | HONORABLE BOBBY D. McCALLISTER, JUDGE |
| JANET CAROL RYBURN | AFFIRMED IN PART; REVERSED AND |
| APPELLEE | REMANDED IN PART |

## LARRY D. VAUGHT, Judge

Pro se appellant Joe Ryburn appeals two post-divorce[1] orders of the Saline County Circuit Court: a May 2011 order reducing child support, and a June 2011 order holding Mr. Ryburn in contempt and awarding appellee Janet Ryburn $104,000 for the appraised value of the marital home.[2] This is the third time this pro se appeal is before our court. In *Ryburn v. Ryburn*, 2012 Ark. App. 256, we ordered rebriefing because Mr. Ryburn's brief did not comply with our rules. When the appeal returned to us, we dismissed without prejudice for lack of a final order. *Ryburn v. Ryburn*, 2012 Ark. App. 435. Because the circuit court has since entered an

---

[1]In December 2004, the Saline County Circuit Court entered a decree of divorce that "approved and confirmed" Janet and Joe Ryburn's "child custody, support and property settlement agreement."

[2]Although Mr. Ryburn's notice of appeal requests relief from the United States Court of Appeals for the Eighth Circuit, he references these two state-court orders, and his jurisdictional statement is made to the Arkansas Court of Appeals. Additionally, he filed the notice of appeal with our clerk of court.

SLIP OPINION

order of dismissal regarding third-party defendant Wells Fargo, we consider the appeal on the merits and affirm in part and reverse and remand in part.

Under the agreement, as set forth in the parties' 2004 divorce decree, Ms. Ryburn was awarded custody of the parties' minor children and was to occupy the home with them "until [she] acquires an alternative dwelling, or until the parties agree to dispose of the house through a sale. Should such sale occur, the parties shall divide the proceeds from said sale equally." Mr. Ryburn was to continue paying all bills, including the home mortgage, credit cards, and all utilities until Ms. Ryburn became "able to pay some of them through her own income," and she was to make a good-faith effort to attempt to earn a supplemental income.

In an August 2009 letter to Ms. Ryburn, Mr. Ryburn wrote that on the advice of his attorney, he had begun foreclosure proceedings on the marital house, which would "take from both of us a burden that will never be of value given the condition of the house and the fact that it is mortgaged for significantly more than can be gained from sale of the house." He wrote that he had phoned Wells Fargo that morning to begin the proceedings and that Ms. Ryburn had the option of continuing to own the house by seeking her own mortgage, with probably about sixty days before the bank would evict her. He also wrote that he had spoken with bankruptcy lawyers and advised that she do the same. He concluded: "After five years of paying you $4,500 a month including mortgage, utilities, child support and every thing else you've gotten, the free ride is over. I believe $270,000 is more than sufficient payment. Thank you for not contacting me."

In a December 2009 order, the circuit court set child support at $1463 a month. Mr. Ryburn (through his attorney) filed a motion for modification in February 2010, alleging in part

that Ms. Ryburn had not attempted to acquire an alternative dwelling; that therefore, the house should be sold; that Ms. Ryburn should be responsible for mortgage payments until the sale because she was residing there; and that Mr. Ryburn's income had dropped, and he should no longer be required to make house payments because she had already had six years to relocate.

In a March 2010 order, the circuit court found that Ms. Ryburn had sufficient income to pay household utilities but not other bills.[3] It denied Mr. Ryburn's request to sell the marital home, observing that the decree was contractual and that the home could be sold only upon "[Ms. Ryburn's] acquiring an alternate dwelling, or the parties agreeing to dispose of the house through a sale." The court found that it lacked authority to sell the house without either condition being met.

In an order of June 2010, the circuit court noted that Mr. Ryburn did not appear despite being given notice. It granted his attorney's oral motion to withdraw and found Mr. Ryburn in contempt based on his refusal to make mortgage payments on the parties' marital home as required by the court's previous order. The court also found that Mr. Ryburn was in arrears in the payment of mortgage, penalties, and interest in the amount of $4870.69 and ordered him to pay all arrearages, interest, and penalties delinquent on the house and to make all future payments on the house in a timely manner as required by the previous orders. Further, based on Mr. Ryburn's failure to attend the hearing, the court issued a Writ of Body Attachment

---

[3]At a November 2009 hearing, Ms. Ryburn testified, "I've gotten a job at Topp's Shoes to try and pay some bills of my own. I make $8.00 an hour, and bring home about $730.00 every two weeks."

commanding the appropriate law-enforcement officers "to take [Mr. Ryburn] into custody and hold [him there] until he appears before this court or post a cash bond."

In January 2011, Ms. Ryburn filed a motion requesting that Mr. Ryburn be held in contempt for failing to pay the mortgage on the home, which was subject to foreclosure and sale. She prayed that she be awarded the reasonable rental value of the home for her entire life expectancy or, alternatively, be compensated for his failure to maintain the home and/or take necessary steps to allow her to remain there. A mutual restraining order, entered the same day, restrained each party from selling, encumbering, contracting to sell, or otherwise disposing of property belonging to the parties except in the ordinary course of business. In April 2011, Mr. Ryburn requested a reduction in child support and claimed a $7696 overpayment.

On May 31, 2011, the circuit court reduced child support to $1218 a month, reserving other issues. In an order entered on June 8, 2011, the circuit court again found appellant in contempt for failure to pay the mortgage as required in the 2004 decree and subsequent orders, which the court characterized as a "domestic support obligation"[4] and awarded Ms. Ryburn judgment of $104,000 plus interest. Mr. Ryburn appeals from these two orders and presents ten points of alleged error: 1) that the divorce decree and property-settlement agreement should be set aside based on its incomprehensible wording and the court's prejudicial interpretation; 2) that the court erred in denying him the ability to present evidence that the contractual obligation to be able to sell the house had been fulfilled; 3) that the court erred in its interpretation of the divorce decree and its prejudicial ruling; 4) that the court erred in refusing to divide the marital

---

[4]Not to be confused with an award of alimony, the circuit court refers to Mr. Ryburn's collective mortgage and child-support payments as a "domestic support obligation."

debt on the home and in awarding Ms. Ryburn judgment in the amount of $104,000; 5) that the court erred in finding Mr. Ryburn in contempt absent evidence of willful conduct; 6) that the court erred in refusing to consider evidence that Ms. Ryburn violated the restraining order and giving her preferential treatment concerning the condition of the marital property; 7) that Ms. Ryburn's attorney should be reprimanded for changing the wording of the court in its orders; 8) that we should remind the circuit court that pro se litigants are to be treated with the same respect due any member of the court; 9) that the circuit court erred in not allowing into evidence Mr. Ryburn's payments of support and resulting indebtedness; 10) that the circuit court erred in the amount of child support it set on two separate occasions.

In consideration of the points on appeal, we remind Mr. Ryburn that pro se litigants are held to the same standards as attorneys. *Ryburn v. Ryburn*, 2012 Ark. App. 256 (citing *Perry v. State*, 287 Ark. 384, 699 S.W.2d 739 (1985)); *Walker v. State*, 283 Ark. 339, 676 S.W.2d 460 (1984). And, a point is not sufficiently developed for review when appellant cites authority without applying the holdings of those cases to the facts of the case at bar and otherwise makes no convincing argument on appeal; we will not conduct research on appellant's behalf. *Thompson v. Thompson*, 2012 Ark. App. 296.

Further, we review domestic-relations decisions de novo on the record, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Hansen v. Hansen*, 2011 Ark. App. 586. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* We give due deference to the circuit court's superior position to

determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.* The circuit court's findings of fact are reviewed in the light most favorable to the appellee, and we will defer to the superior position of the circuit court to judge the credibility of witnesses. *Coker v. Coker*, 2012 Ark. 383, --- S.W.3d ----. Finally, it is the task of the trial judge to determine the expendable income of a child-support payor; when the amount of child support is at issue, we will not reverse the trial judge absent an abuse of discretion. *Parker v. Parker*, 97 Ark. App. 298, 248 S.W.3d 523 (2007). We need not consider arguments made for the first time on appeal. *Key v. Coryell*, 86 Ark. App. 340 185, S.W.3d 98 (2004).

We first consider Mr. Ryburn's arguments relating to the parties' initial divorce decree and property-settlement agreement. He claims that the decree should be set aside based on its incomprehensible wording and the court's prejudicial interpretation of the decree that resulted in an erroneous contempt finding against him. Although the circuit court commented from the bench that the decree was the "worst" it had ever seen and was difficult to make sense of the provisions of the decree, there were no specific findings in the court's written orders. Pursuant to Arkansas Supreme Court Administrative Order No. 2(b)(2), an oral order announced from the bench does not become effective until reduced to writing and filed. *Carroll v. Carroll*, 2013 Ark. App. 401. Unless a circuit court's ruling is reduced to writing and filed of record, we have nothing to review. *Id.*

The parties' contractual agreement, written into the divorce decree, clearly stated that the marital home would be occupied by Ms. Ryburn and the minor children until she acquired alternative housing or the parties agreed to dispose of the house through a sale. The agreement

further stated that Mr. Ryburn would pay the mortgage, credit cards, and all utilities until Ms. Ryburn was able to pay some of them through her own income.

At the time of the final hearing, Ms. Ryburn lived in the marital home along with the parties' minor child. Mr. Ryburn ceased making mortgage payments despite the court's order of March 2010 denying his request to sell the home because the parties had not agreed to do so, and Ms. Ryburn had not acquired alternative housing. He continued to ignore the court's order of June 2010, which found him in contempt of court for failing to fulfill his past mortgage-payment obligation requiring that he continue making future payments. Finally, Mr. Ryburn ignored the court's January 2011 order restraining the parties from encumbering property belonging to them, by pursuing a foreclosure option. Therefore, it cannot be said that the circuit court clearly erred in the June 2011 order finding Mr. Ryburn in contempt for failure to pay the mortgage as required by the 2004 divorce decree and its subsequent orders.

Mr. Ryburn also claims that the circuit court refused to allow evidence showing that Ms. Ryburn moved from the marital home and resided in her own dwelling for two years after the divorce, proving that his contractual obligations had been satisfied. Unfortunately, he failed to show a proffer of this testimony, and without citation to the abstract, he states that his own attempts to testify about her break in residence were disallowed based on a res judicata ruling. He also claims that the circuit court refused to allow evidence showing Ms. Ryburn's theft of property from the marital home and her posting of false and slanderous statements about him on Facebook.[5] An argument is not sufficient if it simply invites the court to search the record

---

[5]The court ruled that the matter was res judicata when Mr. Ryburn testified at an April 2011 hearing that he allowed Ms. Ryburn, after living on her mother's property two years, to

generally for errors. *Goldman v. Goldman*, 2010 Ark. App. 408; Ark. Sup. Ct. R. 4-2(a)(7) (2013) (requiring that a reference in the argument portion of a brief to material parts of the abstract refer to page numbers of the abstract or addendum). Because Mr. Ryburn has failed to direct our attention to the disallowed evidence, he has failed to carry his burden, and we do not address these claims. *Id.*

Mr. Ryburn also argues that the circuit court erred in not requiring a fair and equitable distribution of marital debt and in holding him in contempt. Again, the court committed no clear error in finding Mr. Ryburn in contempt for failure to pay the mortgage as required by the 2004 divorce decree and subsequent orders because the mortgage was not a debt to be divided—it was a contractual obligation. In general, damages recoverable for breach of contract are those that would place the injured party in the same position as if the contract had not been breached. *Dawson v. Temps Plus, Inc.*, 337 Ark. 247, 987 S.W.2d 722 (1999). Damages must arise from the wrongful acts of the breaching party, and the judgment must have some relationship to the damages proved. *Durham v. Smith*, 2012 Ark. App. 690 (observing that the proper measure of damages in a conversion is the fair market value of the property at the time and place of conversion). Unfortunately for Mr. Ryburn, there was no finite date for Ms. Ryburn's occupation of the marital home—so long as a minor child lived there with her. Because Mr. Ryburn breached the parties' contract by failing to pay the mortgage as agreed, it cannot be said that there was clear error in awarding Ms. Ryburn the assessed value of the home.

---

move into the marital home because it was in the Benton School District. He also testified at that hearing that Ms. Ryburn posted on Facebook that he was a "deadbeat" dad, but there is no abstracted ruling that this testimony was not allowed.

8

Next, Mr. Ryburn complains that in the final order of June 2011, Ms. Ryburn's counsel improperly referred to the property settlement as "spousal support," which was never ordered and was never mentioned by the judge. He complains that the improper word manipulation was prejudicial to both the appellate court and to him as a pro se litigant, who was without the experience to notice and address this manipulation. The actual wording in the order that refers to the mortgage-payment requirement is "domestic support obligation," which is admittedly odd (*see infra*). However, Ms. Ryburn's counsel correctly notes that Mr. Ryburn did not avail himself of relief afforded by Arkansas Rules of Civil Procedure 59 (grounds for new trials) or 60 (relief from judgment, decree, or order), and pro se litigants are held to the same standards as attorneys. *Ryburn v. Ryburn*, 2012 Ark. App. 256.

Mr. Ryburn complains that a body-attachment order was attached to a contempt charge never served on him; that he was arrested at his father's funeral in April 2011; that the circuit judge trivialized the next morning's proceedings and his distress after a night in jail; and that after he told the judge he would represent himself due to financial difficulties, neither the judge nor Ms. Ryburn's counsel informed him of the June 2011 motion of contempt or the January 2011 motion "for permanent support." These arguments are nothing more than conclusory remarks and are not addressable on appeal.

Mr. Ryburn further complains that the circuit court denied admission into evidence of the $300,000 he paid Ms. Ryburn in the six years after divorce (including car payments for the adult daughter, car-insurance payments for the entire household, all cell-phone bills, and other financial demands of Ms. Ryburn) and evidence of another debt he incurred, including $75,000

9

in student loans taken out on behalf of their adult child. He cites *Whitworth v. Whitworth*, 2009 Ark. App. 410, 319 S.W.3d 269, for the proposition that money paid for adult children's welfare is evidence of indebtedness, but he fails to acknowledge that this passage is from the dissent. There is no merit to Mr. Ryburn's arguments. In *Vigneault v. Vigneault*, 2010 Ark. App. 716, at 7–8, 379 S.W.3d 566, 571 we observed:

> Although in *Whitworth* consideration was given to Whitworth's support of a child in college, we did not imply that a circuit court falls into error by failing to give credit for paying college expenses. Our law is settled that, unless a child is disabled, a parent's duty of support ceases when a child turns eighteen or graduates from high school. Like the circuit court, our view is that appellant's support of their sons in college is purely a voluntary decision on his part.

(Citation omitted.)

In his final point of appeal, Mr. Ryburn asserts that the circuit court twice miscalculated his child support, first at $1463 in the order of December 2009 and then at $1218.13 in May 2011. He points to a 2008 W-2 and to a letter he wrote to the circuit court with "corrected calculations," apparently after the second order was entered. Although he timely appealed the second order, it is not clear that the W-2 evidence was introduced into evidence for the court's consideration. But, his final point has a second portion that we find compelling.

Mr. Ryburn argues that the requirements of Administrative Order No. 10 support his claim that the circuit court erred by not including a determination of his income or a list of explanations for deviating from our child-support guidelines. "All orders granting or modifying child support (including agreed orders) shall contain the court's determination of the payor's income, recite the amount of support required under the guidelines, and recite whether the court deviated from the Family Support Chart." Ark. Sup. Ct. Admin. Order No. 10, § I. In *Blalock*

*v. Blalock,* 2013 Ark. App. 659, where the child-support order did not contain a determination of the payor's income, did not refer to the guidelines, and did not recite whether it deviated from the family-support chart, we reversed and remanded for further findings by the circuit court in compliance with Administrative Order No. 10 and Arkansas Code Annotated section 9-12-312. *Id.*

Here, the May 2011 child-support order simply states, "Based upon the evidence presented by the Defendant the child support obligation of the Defendant shall be reduced to the amount of $1,218.30 per month." Like *Blalock*, the order lacks determination of the payor's income, reference to the guidelines, and recitation of whether it deviated from the family-support chart. Therefore, we reverse and remand for compliance with Administrative Order 10. All other points of error are either not properly before us for consideration or lack merit.

Affirmed in part; reversed and remanded in part.

GRUBER and WHITEAKER, JJ., agree.

*Joe Ryburn*, pro se appellant.

*Jensen Young & Houston, PLLC*, by: *Terence C. Jensen*, for appellee.