
# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–15–366

| | |
|---|---|
| MARCUS SHANE WILSON<br><br>APPELLANT<br><br>V.<br><br>EDIE LYNNE WILSON<br><br>APPELLEE | **Opinion Delivered** April 6, 2016<br><br>APPEAL FROM THE CROSS COUNTY CIRCUIT COURT [NO. DR–2004-170-4]<br><br>HONORABLE KATHLEEN BELL, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

This appeal stems from the Cross County Circuit Court's denial of Marcus Wilson's petition to set aside a judgment in which it denied Marcus's request to modify visitation with his minor child, D.W. We affirm.

### I. *Facts*

Marcus Wilson and Edie Wilson were divorced in August 2004, and by mutual agreement, Edie was granted custody of the parties' minor children. Marcus was granted visitation and shared parenting.

On February 26, 2010, Edie filed a petition to suspend Marcus's visitation with the children because of allegations that Marcus had been arrested for possession of a firearm, that Marcus and his wife had been manufacturing methamphetamine, and that there was domestic abuse in their home. A temporary ex parte emergency order suspending visitation was entered the same day. On March 5, 2010, Marcus was personally served by process server with a

summons, the complaint, and the order. The summons set forth that a hearing would be held on March 10, 2010, or sooner if Marcus requested one, and that if he failed to respond he would be subject to a default judgment. An affidavit of service of the summons, complaint, and ex parte temporary order was returned.

Marcus did not file an answer, and the hearing took place on March 10, 2010. Marcus did not attend the hearing, and the circuit court entered an order on April 8, 2010, terminating Marcus's visitation with his children.

On November 15, 2013, Marcus filed a petition to reinstate his visitation with D.W., the only child who was still a minor. In his petition, Marcus acknowledged that on February 26, 2010, the circuit court entered a temporary order suspending his visitation. Marcus asserted that the criminal charges against him had been dropped, and that because it was in D.W.'s best interest to have a relationship with his father, the court should reinstate visitation. Edie filed a response on January 10, 2014, arguing that the petition should be denied.

At the hearing on July 31, 2014, Marcus asserted that a material change in circumstances had occurred, namely, that no criminal charges had ever been filed against him and that he was employed and remarried; therefore, Marcus argued, because of his stability over the last few years, and because it was generally good for fathers to be involved in their children's lives, it was in D.W.'s best interest for the court to reinstate visitation. Edie and the child's stepfather asserted that visitation should not be reinstated. They testified that the child's family life had been stable for the last four years and that D.W. was thriving in his current situation that did not include Marcus.

At the hearing, Marcus's attorney explained that the petition to reinstate visitation had referenced the February 26, 2010 order, and not the April 8, 2010 order, because neither she nor Marcus had been aware until that morning that the April order existed and that Marcus had believed that "there was never another hearing." The court refused to hear testimony concerning anything but the issue of modification of visitation and instructed counsel that she could proffer any evidence related to why Marcus did not attend the hearing on March 10, 2010.

On September 10, 2014, the court entered an order denying Marcus's petition to reinstate visitation. In the order, the circuit court made the following findings: there had been little contact between D.W. and his father over the last few years other than a few phone calls and their paths crossing at a family Christmas gathering; Marcus had kept up with D.W.'s life by talking to D.W.'s adult siblings; Marcus's visitation had been terminated in 2010 because he had been arrested and charged with possession of a gun and manufacturing methamphetamine; the criminal charges had been dismissed in 2013; and since 2014, Marcus had remarried, had been employed full time, and was stable in his lifestyle.

The circuit court also found that though Marcus had shown a material change in circumstances had occurred, "there is no evidence introduced which could lead this court to determine that modification is in the best interest of the child. Without that finding, this court may not modify the visitation order." The circuit court also found that Marcus had not addressed "the other factors which this court should consider" listed in *Sharp v. Kellun*, 99 Ark. App. 42, 56, 256 S.W.3d 528, 538 (2007) ("the wishes of the child, the capacity of the

SLIP OPINION

party desiring visitation to supervise and care for the child, problems with transportation and prior conduct in abusing visitation, the work schedule and stability of the parties, the relationship of siblings and other relatives").

On September 22, 2014, Marcus filed a motion to set aside the April 8, 2010 default judgment. Alternatively, he requested postjudgment relief in the form of a new trial.

A hearing on the matter took place on November 12, 2014, and after hearing argument from both sides, the court denied Marcus's motion to set aside judgment. Marcus filed a timely notice of appeal.

## II. *Points on Appeal*

Marcus raises the following four points in this one-brief appeal: (1) the circuit court erred when it denied Marcus's motion to set aside the April 8, 2010 judgment as void for insufficient service; (2) the circuit court erred when it denied Marcus's motion to set aside the April 8, 2010 judgment because the relief granted by the circuit court exceeded the relief sought; (3) the circuit court erred when it denied his Rule 59 motion for a new trial because irregularities in the proceedings had prevented Marcus from having a fair trial and because the circuit court made an error of law; (4) the circuit court erred in refusing to reinstate visitation.

None of Marcus's arguments on appeal are meritorious, and we affirm.

## A. Service

Marcus argues that this court must reverse the circuit court's decision to deny his motion to set aside the April 8, 2010 default judgment because service of the temporary ex parte order entered on February 26, 2010, was not properly made. We disagree, and we

SLIP OPINION

affirm.

Arkansas law is long settled that service of valid process is necessary to give a court jurisdiction over a defendant. *Shotzman v. Berumen*, 363 Ark. 215, 223, 213 S.W.3d 13, 16 (2005). Our case law is equally well settled that statutory-service requirements, being in derogation of common-law rights, must be strictly construed and compliance with them must be exact. Our supreme court has held that the same reasoning applies to service requirements imposed by court rules. *Id*.

It is axiomatic that a circuit court in custody proceedings retains jurisdiction of the cause and can modify a previous decree upon a showing of changed circumstances and in furtherance of the welfare of the child. *Pyle v. Pyle*, 254 Ark. 400, 403, 494 S.W.2d 117, 120 (1973). Where modification is considered a continuation of an original matter before the court, the issuance of a new or original process, or new personal service, is not required. *Parsons v. Parsons*, 267 Ark. 1035, 1038, 593 S.W.2d 483, 485 (Ark. Ct. App. 1980).

Arkansas Rule of Civil Procedure 5 governs service requirements where a court has continuing jurisdiction, and it sets forth the following:

> (1) Whenever under this rule or any statute service is required or permitted to be made upon a party represented by an attorney, the service shall be upon the attorney, except that service shall be upon the party if the court so orders or the action is one in which a final judgment has been entered and the court has continuing jurisdiction.
>
> (2) Except as provided in paragraph (3) of this subdivision, service upon the attorney or upon the party *shall be made by delivering a copy to him* or by sending it to him by regular mail or commercial delivery company at his last known address or, if no address is known, by leaving it with the clerk of the court. *Delivery of a copy for purposes of this paragraph means handing it to the attorney or to the party[.]*
>
> . . .
>
> 3) If a final judgment or decree has been entered and the court has continuing

5

SLIP OPINION

jurisdiction, *service upon a party by mail or commercial delivery company shall comply with the requirements of Rule 4(d)(8)(A) and (C), respectively*.

(Emphasis added.)

The purpose of Rule 5(b)(3) is not to require that a party must serve summonses with motions to modify a final decree when the court has reserved continuing jurisdiction. *Dickson v. Fletcher*, 361 Ark. 244, 249, 206 S.W.3d 229, 232 (2005). Instead, Rule 5 directs that "such motions are required to be served *in the same manner or method* required for a summons and complaint[.]" *Dickson*, 361 at 249, 206 S.W.3d at 232 (Emphasis added.) Arkansas Rule of Civil Procedure 4(d)(1) sets forth that service may be made "[u]pon an individual, other than an infant by delivering a copy of the summons and complaint to him personally[.]"

The permissible methods of serving the motion are listed in Rule 5(b)(2), and personal delivery is specifically set forth as a valid method of service. Rule 5(b)(3) simply provides that *if* service is by mail or commercial delivery service, the requirements of Rule 4(d)(8)(A) and (C) must be satisfied. *See* 2 David Newbern, John Watkins &D.P. Marshall Jr., *Arkansas Civil Practice & Procedure § 38:5* (5th ed. 2011) Service is not *required* to be made by mail, as Marcus argues.

On March 5, 2010, at 1:40 p.m. Marcus was personally served by a process server with the February 26, 2010 order. Marcus urges this court to hold that the circuit court erred by not requiring service by mail; however, nothing in Rule 5 dictates that service *must* be made by mail or forbids service by personal delivery. Rule 4 simply *permits* service via regular and commercial mail *See* Ark. Rule Civ. P 4(d)(8)(A) and (C). As is stated above, Marcus was personally served, which is allowed by Rule 4 and 5, and thus, the requirements of service by

6



mail are inapplicable here.

Marcus argues that there are many errors on the face of the summons; however, any defects in the summons are immaterial because, as we stated above, Rule 5 does not require that a summons be served when the circuit court has continuing jurisdiction as it did here. We find no error, and we affirm.

### B. Remedy Exceeded Relief Requested

Marcus argues that the order terminating his visitation, which was a default decree against him, is void because the remedy ordered by the circuit court did not strictly conform to Edie's request for relief in her complaint–Edie had requested that visitation be suspended, and the circuit court instead terminated Marcus's visitation. We hold that the circuit court did not err, and we affirm.

Our standard of review depends on the grounds claimed by the party that moved to set the decree aside. When the party claims that the judgment is void, as Marcus does here, then the matter is a question of law, which we review de novo. *Nucor Corp. v. Kilman*, 358 Ark. 107, 186 S.W.3d 720 (2004). Where the default judgment is void, proof of a meritorious defense to the cause of action is unnecessary. *See, Foods, Inc. v. Keener*, 335 Ark. 209, 979 S.W.2d 885 (1998).

Arkansas Rule of Civil Procedure 54(c) sets forth that in cases where judgment is entered by default, a party is expressly precluded from obtaining any relief not demanded in his pleadings. *Robinson v. Robinson*, 103 Ark. App. 169, 170, 287 S.W.3d 652, 653 (2008). Judgment by default shall not be different in kind from or exceed in amount that prayed for

in the demand for judgment. *Born v. Hodges*, 101 Ark. App. 139, 141, 271 S.W.3d 526, 528 (2008). The purpose of the rule is to uphold the principle that a judgment entered without jurisdiction of the person or the subject matter or in excess of the court's power is void. *Id.*

First, we examine Rule 55 of the Arkansas Rules of Civil Procedure which sets forth that a default judgment may be set aside when the judgment is void:

> [T]he court may, upon motion, set aside a default judgment previously entered for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) the judgment is void; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; or (4) any other reason justifying relief from the operation of the judgment. The party seeking to have the judgment set aside must demonstrate a meritorious defense to the action; however, if the judgment is void, no other defense to the action need be shown.

Marcus argues that the circuit court's decision to terminate visitation with D.W. in the April 8, 2010 order was in excess of its power because Edie did not specifically ask for termination, only suspension. To adopt Marcus's argument would result in an absurd interpretation of our rules. This court does not engage in interpretations of a court rule that defies common sense and produces absurd results. *Jonesboro Healthcare Ctr., LLC v. Eaton-Moery Envtl. Servs., Inc.*, 2011 Ark. 501, at 5, 385 S.W.3d 797, 800.

Although visitation is always modifiable, to promote stability and continuity for the children and to discourage repeated litigation of the same issues, courts require more rigid standards for modification than for initial determinations. *Baber v. Baber*, 2011 Ark. 40, at 9, 378 S.W.3d 699, 705. This court has stated the best interest of the child is the polestar for making judicial determinations concerning custody and visitation. *Buckley v. Buckley*, 73 Ark. App. 410, 416, 43 S.W.3d 212, 216 (2001). A circuit court maintains continuing jurisdiction

over visitation and may modify or vacate those orders at any time when it becomes aware of a change in circumstances or facts not known to it at the time of the initial order. *Baber,* 2011 Ark. 40 at 9, 378 S.W.3d at 705. Fixing visitation rights is a matter that lies within the sound discretion of the circuit court. *Id.* When the best interests of the child are at stake, the circuit court should look into the particular circumstances of each case and act as the welfare of the child appears to require. *Moon v. Marquez*, 65 Ark. App. 78, 80, 986 S.W.2d 103, 104 *aff'd*, 338 Ark. 636, 999 S.W.2d 678 (1999). We know of no type of case wherein the personal observations of the court mean more than in a child custody case. *Wilson v. Wilson*, 228 Ark. 789, 793, 310 S.W.2d 500, 502 (1958).

The circuit court did not err when it modified Marcus's visitation in the April 8, 2010 order, and Marcus's argument that Edie was given a greater or different remedy than she asked for is not well taken. A circuit court's determination of the best interest of a child is not a matter of an amount of recovery prayed for by a party. Furthermore, the circuit court's determination to terminate Marcus's visitation with D.W. was not "different in kind" from Edie's request for a suspension of visitation. A modification of visitation-either suspension or termination or any other possible outcome-depends on the same factors: a material change in circumstances and the best interest of the child. *See Buckley*, *supra*. It would be absurd for this court to hold that the degree of modification of visitation asked for by Edie was "different in kind" from the degree of modification of visitation that the circuit court found to be necessary to further D.W.'s best interest.

The circuit court's restriction of visitation was consistent with the court's continuing

responsibility in visitation matters, and thus, we affirm.

In the alternative, Marcus argues that the default judgment should be set aside under provisions (1) and (4) of Rule 55 (c): "surprise" and "any other reason justifying relief from the operation of judgment," respectively. We disagree. The party seeking to have the judgment set aside must demonstrate a meritorious defense to the action. Ark. R. Civ. P. 55. Marcus does not present a meritorious defense, as is required, and therefore his argument fails. "A point is not sufficiently developed for review when appellant cites authority without applying the holdings of those cases [or the dictates of our rules] to the facts of the case at bar and otherwise makes no convincing argument on appeal; the appellate court will not conduct research on appellant's behalf." *Ryburn v. Ryburn*, 2014 Ark. App. 108, at 3, 432 S.W.3d 102, 106. On this point, we affirm.

## C. Motion for a New Trial

Marcus argues that the circuit court erred in not granting his motion for a new trial based on Rule 59(a), which sets forth:

> A new trial may be granted to all or any of the parties and on all or part of the claim on the application of the party aggrieved, for any of the following grounds materially affecting the substantial rights of such party: (1) any irregularity in the proceedings or any order of court or abuse of discretion by which the party was prevented from having a fair trial; . . . (8) error of law occurring at the trial and objected to by the party making the application.

Marcus argues that the irregularity that he believed occurred began with the improper service of notice of the February 26, 2010 temporary ex parte order, which we have stated was properly made. Because the essence of Marcus's argument relies upon the presumption of improper service, and because we have decided that service was proper, his argument fails.

SLIP OPINION

SLIP OPINION

First, Marcus asserts that the February 26, 2010 ex parte temporary order was granted without notice. Marcus argues that because he did not receive proper notice, the circuit court issued the February 26, 2010 order in error. Specifically, Marcus argues that because Edie had not complied with the requirement set forth in Arkansas Rule of Civil Procedure 65(b)(1)(A), which governs temporary restraining orders issued without notice, and sets forth that "specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss of damage will result to the movant before the adverse party can be heard in opposition[.]" Marcus asserts that Edie did not submit an affidavit or a verified complaint; therefore, he was entitled to a new trial under Rule 59(a)(1) and (8) because the circuit court erred as a matter of law by issuing a temporary restraining order and because he was denied a fair trial.

The Rule 65(b)(1)(A) requirement of an affidavit or verified complaint only applies to situations where notice was *not* given. Because Marcus's argument hinges on failure of service of notice, which we have stated earlier in this opinion was properly made, his argument fails, and on this point we affirm.

Marcus also argues that he was entitled to a new trial via Rule 59 because the circuit court erred in granting greater relief than Edie requested. We rejected this argument in a prior point on appeal, and we need not address the issue again.

Marcus's final argument concerning this point on appeal is that the circuit court erred in denying his motion for a new trial because the burden of proof was impermissibly shifted to him to prove that a material change in circumstances had occurred when he petitioned to

have visitation reinstated. Marcus argues that the burden of proof should have been on Edie to show that the circumstances that led to a temporary restraining order had continued such that a permanent restraining order was necessary. He states in his brief that his "petition to reinstate visitation was a motion to dissolve the restraining order."

Marcus is incorrect. The error in Marcus's argument lies in his conflation of dissolution of a temporary restraining order with modification of visitation. They are not the same.

When a modification of visitation is requested, as it is here, the moving party must show a material change in circumstances such that the best interest of the child will be served by the modification. *See Moix v. Moix*, 2013 Ark. 478, at 9, 430 S.W.3d 680, 685. Marcus's argument that he met the necessary threshold to dissolve the restraining order, and thus, his visitation with D.W. should have been reinstated, is misguided. On this point we affirm.

The issue of the circuit court's denial of Marcus's request for modification of visitation is fully addressed below.

D. Material Change of Circumstances and Best Interest of the Child

Marcus argues that the circuit court erred in refusing to reinstate his visitation with D.W. The Arkansas Supreme Court stated our standard of review of modification of visitation cases in *Moix, supra*:

In domestic relations cases, we review the evidence de novo and will not reverse the circuit court's findings unless they are clearly erroneous. We also give special deference to the circuit court's superior position in evaluating the witnesses, their testimony, and the child's best interest. Because a circuit court maintains continuing jurisdiction over visitation, it may modify or vacate a prior visitation order when it becomes aware of a material change in circumstances since the previous order. The party seeking modification has the burden of demonstrating such a material change in circumstances. With regard to visitation, the primary consideration is the best interest of the child.

> Important factors for the court to consider in determining reasonable visitation are the wishes of the child, the capacity of the party desiring visitation to supervise and care for the child, problems of transportation and prior conduct in abusing visitation, the work schedule or stability of the parties, and relationship with siblings and other relatives. We have held that fixing visitation rights is a matter that lies within the sound discretion of the circuit court.

(Citations omitted). As stated above, our court has held that "[w]hile custody is always modifiable, our courts require a more rigid standard for modification than for initial determinations in order to promote stability and continuity for the children and to discourage repeated litigation of the same issues." *Stellpflug v. Stellpflug*, 70 Ark. App. 88, 14 S.W.3d 536 (2000). The party seeking the change also has the burden to show that the modification is in the best interest of the child. *Brown v. Ashcraft*, 101 Ark. App. 217, 220, 272 S.W.3d 859, 862–63 (2008).

In the present case, the circuit court found that a material change of circumstances had occurred, namely, that Marcus had a stable lifestyle and that he had resolved the circumstances that had led to the termination of visitation with his children; however, the circuit court found that Marcus had failed to present any testimony showing that it would be in D.W.'s best interest to reinstate visitation with his father, and it also found that Marcus had not addressed important factors the court normally considers in such cases-the wishes of the child, the capacity of the party desiring visitation to supervise and care for the child, problems of transportation and prior conduct in abusing visitation, the work schedule or stability of the parties, and relationship with siblings and other relatives. We find no error in the circuit court's determination that Marcus did not present sufficient evidence that it was in D.W.'s best interest to reinstate visitation; therefore, on this point we affirm.

Affirmed.

GLADWIN, C.J., and GRUBER, J., agree.

*Andrea Brock, P.A.*, by: *Adnrea Brock*, for appellant.

No response.