Cite as 2020 Ark. App. 381

# ARKANSAS COURT OF APPEALS

DIVISION IV

**No.** CV-19-906

| | |
|---|---|
| STEPHEN C. RIGGS<br><br>                              APPELLANT<br><br>V.<br><br>SUSAN CARTER RIGGS<br><br>                              APPELLEE | **Opinion Delivered:** September 9, 2020<br><br>APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT<br>[NO. 16JDR-18-85]<br><br>HONORABLE CINDY THYER, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

Appellant Stephen C. Riggs appeals the Craighead County Circuit Court's denial of his motion to set aside default judgment. We affirm.

I. *Factual History*

On January 26, 2018, Susan Carter Riggs filed a complaint for divorce from Stephen C. Riggs in the Craighead County Circuit Court. In the complaint, she requested that the court "dispose of the rights of the parties, and make a determination of the responsibility of the parties for any debt which may exist in the event they are unable to reach a settlement regarding such." Susan further asked the court to "resolve any issues regarding the parties' property and responsibility for debts, in the event they are unable to reach a settlement regarding such." On February 2, Stephen was served with a summons. In the summons,

Stephen was advised that he had thirty days from delivery to file a response and that if he did not timely file a response, default judgment may be entered against him.

Stephen did not respond to the complaint, and on September 10, the circuit court held a hearing on the uncontested divorce. Susan testified that she and Stephen were married on January 1, 2011, and they separated August 21, 2017. Susan explained that she filed for divorce in part because Stephen borrowed money from her, he had not paid her back, and he used her assets to secure loans without her knowledge. Susan stated that Stephen claimed that his business, Carr, Riggs & Ingraham, CPAs and Financial Advisors, is worth $3 million, but she discovered that his business is actually valued at $318 million, and he owns 30 percent of the business. Susan explained that she owns two businesses, Home Health Professionals & Hospice, Inc ("HHPH"), and Regency Properties; and she owned four real properties in Arkansas: her home in Jonesboro, two business properties in Jonesboro located at 2222 and 2216 Spence Circle, and a property in Blytheville. Susan also testified that she was the sole owner of four properties in Florida located at 79 and 85 Woody Wagon Way in Seacrest Beach, a condo unit, and a property located at "2533 Greenbriar."

Susan explained that she made several loans to Stephen that he was obliged to pay back. Susan testified that Stephen obtained a loan for $250,000 using the property at 85 Woody Wagon Way as collateral. She stated that she loaned him $31,707.19 to make repairs on a home that he owned and later sold, keeping the proceeds for himself. Susan testified that she paid $25,000 toward Stephen's attorneys' fees, and that she loaned Stephen $148,868 relating to a tax issue. Though Susan did not state in her complaint for divorce that she requested alimony, at the hearing, Susan requested $5000 a month in alimony.

2

Susan testified that she would like each party to retain his and her premarital and separate property, including their respective businesses, accounts, insurance policies, real property, and personal property.

The circuit court entered default judgment the same day. In the order, the court awarded Stephen his stock in, and ownership of, his accounting business. The circuit court found that the business is worth around $3 million according to valuation reports, though the court noted that the valuation had not changed since the beginning of the business despite its substantial growth. Stephen retained all real and personal property in his name or possession, all personal and real property in his name purchased since the date of marriage, and all household possessions in his name or possession, including vehicles. Stephen was also awarded all bank accounts in his name and any life insurance in his name.

As to Susan, the circuit court found the she retained her interest in her two companies and that Susan is the sole owner of the eight real properties she testified about at the hearing. Susan retained all personal property in her name and all household items in her name or possession, including vehicles. Susan also retained her bank accounts and life insurance in her name.

The circuit court found that the parties were solely responsible for all debts in their names. The circuit court further found that Stephen is indebted to Susan for the loans made on his behalf and ordered him to repay the following to her or the lender: the $250,000 loan secured by Susan's property at 85 Woody Wagon Way; the $31,707.19 loan to Stephen for home repairs on a house he sold, retaining the profits solely for himself; the $25,000 loan

for Stephen's attorneys' fees; and the $148,868 tax loan. The court awarded Susan alimony of $5000 a month for five years.

On October 3, Stephen filed a motion to set aside the decree. In his motion he claimed that he and Susan had been negotiating the divorce amicably, even obtaining a loan in both their names "to secure agreed upon debts from which [Susan] was to receive an agreed upon amount of $45,580" and that they had divided personal property and financial accounts. Stephen stated that more than once, Susan told him that her attorney would send him a proposed agreement "containing the terms" for his signature. Stephen's two calls to Susan's attorney were unreturned, and he never received any documentation, other than the complaint and summons, until he received the divorce decree. Stephen contested the alimony award, arguing that Susan provided no evidence regarding the need for alimony or his ability to pay. Stephen also asserted that Susan did not request an inequitable distribution of assets or debts in the complaint for divorce. Stephen asserted that a default judgment should be set aside pursuant to Rule 55 of the Arkansas Rules of Civil Procedure "to give him an opportunity to participate in the dissolution proceedings."

Susan responded that she was entitled to default judgment because Stephen never answered the complaint. Susan stated that Stephen did not assert a meritorious defense as required by Arkansas Rule of Civil Procedure Rule 55 and that Stephen had an opportunity to participate in the divorce proceedings and chose not to do so. She denied that she or her attorney misrepresented any fact or gave him any reason not to answer the complaint, and she specifically denied that she told Stephen that her attorney was preparing an agreement. Susan explained that Stephen is an accountant and a shareholder and partner in a large,

4

multistate company with over sixty offices, and he has been involved in legal proceedings in the past. According to Susan, Stephen failed to attend to business, and he understood the consequences of his inaction.

Stephen filed an amended motion to set aside the divorce decree and a brief supporting his motion additionally claiming that Susan failed to request alimony in her complaint or present evidence regarding her need for alimony and his ability to pay; thus, the circuit court exceeded its power when it awarded alimony, and the default divorce decree is void. Stephen asserted that the court also exceeded its authority when it granted "an inequitable distribution of the marital assets" and attributed "at least $400,000 worth of marital debt to the Defendant including a debt of $148,868 for which no explanation is given." By contrast, Stephen claimed, Susan "was allowed to retain ownership of real property purchased during the marriage with no compensation for the value of said property being allocated to the Defendant."

Susan responded that her complaint included a request for the court to determine "any issues regarding the parties' property" and to "grant all other proper relief to which Plaintiff may be entitled"; thus, the court's award of property and assignment of debt does not exceed what she requested in the complaint nor is it different in kind from the relief requested. Susan attached to her response two intraoffice emails to her attorney showing that Stephen called him twice but that he instructed his assistant to "tell [Stephen] that I represent Susan and not him. Sorry, but I cannot talk to him."

In February 2019, Stephen filed an affidavit in which he made the following claims: after filing for divorce, he and Susan exchanged emails and talked on the phone regarding

the division of assets and debts; he provided Susan's health, dental, and vision insurance after their separation until May 2018; three of Susan's homes contain his furniture; he was familiar with Susan's attorney, but the attorney never returned his calls; the parties never discussed alimony because Susan has "a larger net worth" and their incomes are similar; Stephen never disclosed his income to Susan's attorney nor did he fill out an affidavit of financial means; he received the complaint for divorce and summons and no other documentation until he received the default divorce decree; Susan solely owns her business, HHPH, and he made a loan to this business during the marriage through Regions Bank that he was still personally guaranteeing; Susan discussed divorce matters with him in emails, including that she would send him information on the divorce when her attorney returned from out of town; by his calculation, the circuit court allocated Stephen $3,997,000 in assets and $620,000 in debt and Susan was allocated $14,532,000 in assets and $1,365,000 in debt; Susan valued her business at $10 million in a 2014 loan application with Regions Bank; during the marriage the parties bought a condo unit together in Destin, Florida, for which she paid $35,000 and he paid $50,000; in 2017, Susan refinanced one of the two homes in Seacrest Beach, Florida, that she owns, and he alone was making the payments on this loan that they both guaranteed; when this refinanced mortgage is paid in full, Susan will either receive $79,580 or be relieved of debt; and Stephen disputed Susan's testimony that she loaned him $31,707 for home repairs, and he explains he sold the house for less than the debt owed on it, so there were no proceeds from the sale.

Stephen attached three exhibits to his affidavit. Exhibit A contains email correspondence between Stephen and Susan. In the first email, Stephen suggested a simple

dissolution of marriage in Florida and stated that he owes Susan $20,000 for legal fees she loaned him, that she paid $35,000 for the condo unit in Florida, and he paid the balance of $50,000. Stephen also stated that he cosigned for the loan on Woody Wagon Way and that he was responsible for the loan. Susan responded that she had filed for divorce in Arkansas and thought that the matter should proceed in Arkansas. Susan did not respond to his claims regarding debt or property ownership. In another email, Susan thanked Stephen for filing a tax extension but informed him that she already filed extensions as married but filing separately, and she stated that her attorney would work on the details of the divorce when he returned to the office. In a final set of emails, Stephen stated that he is sending Susan a COBRA health-insurance package. He explained that he tried calling her attorney and that he assumed she wanted him to do so. Susan responded by providing an address for Stephen to send the COBRA package and did not address Stephen's contact with her attorney.

Exhibit B contains Stephen's self-compiled list of his accounts, personal property, and real property and the value of each. The list provides that HHPH is worth $10 million. The eight properties Susan testified about at the divorce hearing are listed along with their values, and Stephen notes that three Florida properties were purchased during the marriage—85 Woody Wagon Way, 2533 Greenbriar, and Beachside Inn. The last of these, Beachside Inn, he claims "has always been considered mine. I want her to pay $35,000 and own this. Title is in her name."

Exhibit C is Susan's 2014 Regions Bank personal financial statement. The form provides space for the borrower to list solely owned real property, how much the property is worth, and when the property was purchased. In this space, Susan listed the eight real

properties she testified about at the hearing. Susan named herself as the sole holder of each title, and seven of the eight properties show a purchase date before January 1, 2011—the date Stephen and Susan were married.[1]

A hearing was held on the matter. Counsel argued that Stephen was surprised by the default judgment because he had no reason to believe that it would be entered while they were amicably negotiating a settlement. Counsel clarified that Stephen was not asserting that fraud, misrepresentation, or misconduct occurred, only surprise and that the assets and debts were divided unequally, which was not requested; thus, the order was void. Stephen asserted that the affidavit he supplied raised questions about Susan's sole ownership of certain properties, and he disputed the finding that there was a loan for repairs to a house. Stephen explained that the order was either void, or alternatively, Stephen was entitled to have the order set aside for surprise or excusable neglect. He requested that the court allow the parties to litigate the issues.

On August 16, 2019, the court entered an order modifying the divorce decree, finding that Rule 55(c)(4), and not sections (c)(1), (c)(2), or (c)(3) of Rule 55 applied here. The court found that there was sufficient evidence of a meritorious defense to the alimony claim and set aside that portion of the original decree; however, the circuit court also found that the remainder of the decree was not subject to attack and remained in effect. This appeal follows.

---

[1]The only property shown as purchased after the date of marriage is 2216 Spence Circle, and Stephen states in his brief and filings with the circuit court that he has no interest in the property.

On appeal, Stephen asserts that portions of the divorce decree are void because the circuit court granted relief not requested by Susan. Specifically, Stephen claims the court exceeded its power by (1) awarding alimony; (2) unequally dividing marital assets and debts; and (3) granting "judgment to appellee for loans in the amount of $455,575.19." Stephen also claims that the default judgment should be set aside for surprise, misrepresentation, or other justifiable cause under Ark. R. Civ. Proc. 55(c)(1), (3) and (4). We disagree and affirm.

II. *Discussion*

A. Default Judgment Void

When a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Arkansas Rules of Civil Procedure, a default judgment may be entered against him. *See* Ark. R. Civ. P. 55(a). Default judgments are not favorites of the law and should be avoided when possible. *Born v. Hodges*, 101 Ark. App. 139, 271 S.W.3d 526 (2008). One reason courts are admonished to avoid default judgments when possible is that a default judgment may be a harsh and drastic result affecting the substantial rights of the parties. *See id.*

Our standard of review depends on the grounds upon which the appellant is claiming that the default judgment should be aside. *Born, supra.* In cases where the appellant claims that the default judgment is void, the matter is a question of law, which we review de novo and give no deference to the circuit court's ruling. *Id.* In all other cases where we review the motion to set aside a default judgment, we do not reverse absent an abuse of discretion. *Id.*

For his first point on appeal, Stephen argues that the divorce decree is void because Susan did not request alimony in the complaint for divorce, and she presented no evidence of her need for alimony or Stephen's ability to pay. Because the circuit court agreed with Stephen, setting aside the decree as to the alimony award, and because Susan does not cross-appeal the court's decision, Stephen is prevented from appealing this ruling. A party cannot appeal from a favorable ruling. *See Smith v. Smith*, 2015 Ark. App. 539, at 3. Accordingly, we decline to reach the merits of Stephen's argument regarding the initial award of alimony that the circuit court set aside.

Before we address the remainder of Stephen's argument that the circuit court's order is void, we dispense with a preliminary matter. Stephen asserts that the loans the circuit court ordered him to repay to Susan are not properly considered debt but are in a separate category better classified as "judgments." He is wrong. Stephen admits that "it may be a matter of first impression," and we agree that there is no support in our caselaw for his position that this debt should be classified as "an award of judgment between spouses" and different in kind from a debt responsibility to be determined by the circuit court.

We now turn to the crux of Stephen's argument—that the decree is void as to the settlement of property and debt because Arkansas Rule of Civil Procedure 54(c) prevents parties seeking default judgment from obtaining relief beyond what is demanded in the pleadings. Stephen argues that Susan did not request an unequal division of marital property and debt in the complaint and that her testimony at the hearing "lacked sufficient detail to inform the trial court that the division sought was unequal but equitable"; thus, the court

10

exceeded its authority in unequally dividing marital property and debt. Stephen's argument fails.

Arkansas Rule of Civil Procedure 54(c) sets forth that in cases where judgment is entered by default, a party is expressly precluded from obtaining any relief not demanded in his pleadings. *Wilson v. Wilson*, 2016 Ark. App. 191, 487 S.W.3d 420. Judgment by default shall not be different in kind from, or exceed in amount of, that prayed for in the demand for judgment. *Id*. The purpose of the rule is to uphold the principle that a judgment entered without jurisdiction of the person or the subject matter or in excess of the court's power is void. *Id*.

In her complaint for divorce, Susan requested that the court divide the assets and debts of the parties, specifically stating that she wished the court to "resolve any issues regarding the parties' property and responsibility for debts." This language gave Stephen sufficient notice of the matters the circuit court would decide, and we hold that the relief requested is not different in kind from the court's award of property and assignment of debt.

Stephen compares the instant case to *Robinson v. Robinson*, 103 Ark. App. 169, 287 S.W.3d 652 (2008), in which the appellee requested in her complaint for divorce that the circuit court adjudicate marital property and debt. The appellee did not specify any monetary amounts in her request. We held that "the marital property and debt award necessarily exceeded in amount that which was prayed for in the demand for judgment." *Robinson*, 103 Ark. App. at 170–71, 287 S.W.3d at 653. Stephen ends his comparison of the cases there; however, *Robinson* is factually distinguishable from the instant case, and those specific facts are inextricable from the circuit court's decision in that case. In *Robinson*, the

11

appellant answered the complaint, albeit late, and he appeared at the hearing to present a defense to the marital property and debt claims. The circuit court refused to allow him to participate in the hearing. Our court held that the circuit court abused its discretion by refusing to allow appellant to present evidence at the divorce hearing and by refusing to grant a new trial allowing him to participate in the proceedings regarding the issues of marital property and debt. We reversed and remanded for retrial of those issues. Here, Stephen never answered the complaint, and he does not argue that he was present at the hearing or that he requested and was denied an opportunity to present evidence. Stephen has not persuaded us that the circuit court exceeded its power in determining the property and debt matters because the relief Susan requested was not different in kind from that which the circuit court granted.

## B. Surprise, Misrepresentation, and Other Reasons Justifying Relief

For his second point on appeal, Stephen argues that the default judgment should have been set aside due to misrepresentation, surprise, or other reasons justifying relief. Specifically, Stephen reiterates his argument above that he was "surprised" by the court's division of assets and debts and not given notice that such a division could occur, and he asserts that Susan misrepresented to the court the value of their respective businesses, the parties' interest in the various properties, and debts he incurred on Susan's behalf. As to misrepresentation, Stephen states that Susan misled the court with her testimony regarding the value of their respective businesses, the parties' interest in the real properties, and the debts between the parties. We affirm.

Pursuant to Rule 55(c) of the Arkansas Rules of Civil Procedure, a default judgment may be set aside for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) the judgment is void;

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) any other reason justifying relief from the operation of the judgment.

While it is true that defendants wishing to set aside default judgments must demonstrate a meritorious defense to the action, the defense in and of itself is not sufficient without first establishing one of the grounds laid out in Ark. R. Civ. P. 55(c). *McGraw v. Jones*, 367 Ark. 138, 238 S.W.3d 15 (2006). The naked allegation that a party has a meritorious defense does not warrant setting aside a default judgment. *Adams v. Moody*, 2009 Ark. App. 474, 324 S.W.3d 348. In cases in which we review the motion to set aside a default judgment, we do not reverse absent an abuse of discretion. *Lockard & Williams Ins. Servs., Inc. v. Waldrip*, 2020 Ark. App. 274, 600 S.W.3d 662.

Here, Stephen received both the divorce complaint that asked the court to decide property and debt issues and the summons advising him that failing to respond within thirty days would result in default judgment. He admits having been involved in legal proceedings before, and he owns his own multistate accounting firm. Stephen knew the consequences of not responding to the complaint, yet he chose not to.

On appeal Stephen directs our attention to his mostly unsupported claims of ownership interest in certain property and loans he purports to have made to Susan. Essentially, he requests that we reweigh the evidence in his favor, which we will not do.

*See Glover v. Glover*, 2020 Ark. App. 89, 595 S.W.3d 54. We must give due regard to the opportunity of the circuit court to judge the credibility of witnesses. *Id.* The burden of diligence is on all parties to stay informed about the status of a case. *Id.*

Moreover, the record Stephen presents amounts to his unsupported claims that Susan misrepresented her sole ownership of real property and the liability for the debts incurred. Under these facts, we cannot conclude that the court abused its discretion in refusing to set aside the judgment due to surprise, misrepresentation, or other reasons justifying relief.

Affirmed.

HARRISON and BROWN, JJ., agree.

*Owens, Mixon & Heller, P.A.*, by: *Aaron D. Heller* and *W. Lance Owens*, for appellant.

*Lyons & Cone, P.L.C.*, by: *Jim Lyons* and *David D. Tyler*, for appellee.